Winegardner and Hickman, appellants, sued The William J. Burns International Detective Agency, Inc., (Agency) for breach of contract seeking recovery for damages suffered as the mortgagees in possession of the Townhouse Motel in Huntsville. After a trial without a jury the circuit court entered judgment for the Agency. The issue is whether the court erred in its refusal to allow the appellants to introduce evidence of a subsequent oral modification of the written contract between the parties. We hold it did and reverse.
In August, 1969, the Townhouse Motel closed and the appellants entered into a written contract dated August 6, 1969, with the Agency in which the Agency agreed to provide security for the premises. The contract provides that it is operative on a month-to-month basis. A portion of the contract is as follows:
 "Burns Patrol Service agrees to furnish Night Patrol Service to the Subscriber at 2806 So. Parkway, Huntsville, Alabama, by bonded, Commissioned Patrolmen intermittently between the Hours of 7:30 P.M. and 5:30 A.M., seven nights per week. These patrolmen will check your premises for Forcible Entry, Unauthorized Persons, Unlocked Doors, Broken Windows, Fire and such other irregularities as may come to their attention, and written reports thereof made to the Subscriber. Check all doors four times a night. Check the swimming pool.
Protection signs will be furnished for outside use.
 This contract shall be operative on MONTH TO MONTH basis, but shall continue IN FULL FORCE until either party may, by WRITTEN NOTICE to the other, signify the desire to terminate it 30 days thereafter." [Emphasis added.]
In October, 1969 the appellants activated the heating unit. The heating system pumped hot water through pipes located throughout the motel. In January, 1970 the heating system failed. The water pipes burst during freezing weather causing extensive water damage.
The written contract was supplemented or modified by an alleged oral agreement reached in October, 1969, which provided that the Agency would check on a regular basis the boiler pressure, boiler temperature, *Page 1056 
and pump to assure that the heating system was functioning properly. Appellants sought to prove the oral agreement by offering evidence of a conversation between Eddie T. Kidwell, an engineer and agent of appellants, and Jimmy Lee Hancock, supervisor of the Agency. The trial court refused to allow this evidence and held that the Agency was under no contractual duty to check the motel heating system.
The Agency argues that Hancock had no authority to contract and consequently could not bind the Agency. W.W. Casey, who was Hancock's immediate supervisor with the Agency, testified that he had authority to contract but Hancock did not. We quote from portion of the record of Casey's testimony:
"Q Actually was Mr. Hancock an assistant manager?
A No, sir.
Q Assistant to you?
A No, sir. He was — whatever.
Q Operations supervisor?
A Yes, sir.
Q Well, what did the duties of that office consist?
 A He was in charge of everything in the Huntsville area under my supervision.
Q Did he hire?
A Yes, sir.
Q Did he fire?
A With my approval.
Q Did he assign men to a job?
A Yes, sir.
Q Did he relieve them from a job if necessary?
A Yes, sir.
 Q Is there anything that you were authorized to do that he wasn't authorized to?
A Yes, sir.
Q What was that?
A Sign contracts.
 Q Now, did you sign the contract that started the service at the Town House Motel?
A No, sir.
Q Did anybody sign it?
 A This one is not signed. Of course, I wouldn't remember whether it was signed or not, unless I saw my own signature on it."
. . . . .
 "Q Did you have this contract typed up, this Plaintiff's Exhibit 4?
 A Well, I imagine I did. It was typed in the office there.
 Q You wouldn't have typed, `7:30 P.M. until 5:30 A.M.' would you?
 A No. It was typed wrong. If it come across my desk I would have changed it.
Q Did it come across your desk?
A Must not have or I would have signed it.
Q In other words, it didn't come across your desk?
A I don't think so."
. . . . .
"Q So, it never was presented to you for signature?
 A If they had sent it back to me without a signature I would have signed it. I didn't know it wasn't signed.
 Q Now, do you remember this question I asked you in your deposition, page 9, line 18, `Did you sign the contract, or do you recall?' To which you answered, `To my knowledge I can't remember ever signing it, to tell you the truth about it.'
A That's right, I don't.
 Q Then the question was, `Here is the contract which is attached to this complaint, or at least a copy is attached to the complaint in the case, and we will ask the court reporter to mark that Exhibit 1 to your testimony. You will notice that it has no signature on the behalf of the detective *Page 1057 
agency.' You answered, `That's right. That's because it never did come to me, I guess. I think that looks like Hancock. I don't know.' Do you remember saying that?
A I probably said it. I don't remember.
Q In your best judgment right now?
A I probably said it, sure.
 Q Well, right now, though, in your best judgment, did Mr. Hancock supervise the preparation?
 A The way Hancock did business, sent it out without having me sign it.
Q That's what you mean, Hancock did it?
 A That's his way of doing business, that's the reason he was relieved."
It appears from the record that if Casey didn't approve the contract then it must have been approved by Hancock. The record is clear that Hancock was the only person with whom appellants dealt. The contract was not signed by anyone from the Agency. The Agency admits the contract was binding, consequently it appears Hancock was the only person who could have bound the Agency. If in fact Hancock did not have actual authority to contract for the Agency, then clearly under these circumstances he had apparent authority.
The Agency contends there was no consideration for the oral agreement and the trial court should be affirmed. Appellants claim only mutual assent is required to support the modification.
A written contract may, in the absence of statutory provisions requiring a writing, be modified by a subsequent oral agreement. Commercial Credit Co. v. Perkins, 236 Ala. 616,184 So. 178 (1938); Moore v. Williamson, 213 Ala. 274,104 So. 645 (1925).
Whether the modification of a contract must be supported by a new consideration other than mutual assent has been, in times past, the object of exhaustive judicial opinions in Shriner v.Craft, 166 Ala. 146, 51 So. 884 (1910), and Moore v.Williamson, supra. While we do not intend to undertake another lengthy review of the principles and authorities involved, we are of the opinion that the rule applicable to this case is that an executory agreement may be modified by the parties without any new considerations other than mutual assent. Watsonv. McGee, 348 So.2d 461 (Ala., 1977); Allied Mills, Inc. v. St.John, 275 Ala. 69, 152 So.2d 133 (1969); Moore v. Williamson,supra. The written contract, operative on a month to month basis was, at least to future months, executory and thus subject to oral modification upon mutual consent of the parties.
We are particularly impressed with the rule stated in Moorev. Williamson, supra:
 "`* * * [1] The power and right of the parties to a contract to cancel, change, or replace it by a new one are beyond dispute; [2] that for the new agreement some consideration is requisite; [3] that consideration, where a contract is rescinded, may consist simply of mutual releases; [4] when it is changed in unimportant details without impairing its main obligations and purposes, nothing more than mutual consent is necessary; [5] and when it is explained, supplemented by additional matter not covered, or corrected as to errors, the original consideration is enough for the new agreement; [6] when a contract is altered in some or all of its essential features, or is supplanted by a substitute, the secondary contract must have a new consideration, which may be, of course, the release of old obligations, the lightening of former burdens, the according of new benefits or advantages, but if all the benefits are conferred upon one party, and all the burdens put upon the other, a consideration will be lacking, and the new contract will be void; [7] either party may waive any right or benefit he may have by a contract, and if the other party acts upon the faith of the waiver, the question of consideration is out of the case, upon the doctrine of estoppel; [8] if a new agreement abrogates, alters, or supplants an old one, and is fully executed by performance *Page 1058 
on both sides, inquiry into its consideration is closed; [9] as to what constitutes a consideration, especially as to what constitutes a sufficient consideration, for a secondary contract, can be understood only by a great multitude of special instances.'"
Designations [4], [5] and [7] in the above quoted rule are applicable to the facts in this case. In regard to designations [4] and [5] the written contract provided that the patrolmen will check for "such other irregularities as may come to their attention." It could be argued that this oral agreement was a change in an unimportant detail without impairing the main obligation in the written contract, and also that it tended to explain a possible ambiguous provision. In either instance the original consideration would be sufficient. Designation [7] is based on the doctrine of estoppel. Hancock agreed to check the heating system and posted instructions to that effect in the room where the system was located. This could have lead Kidwell to rely on Hancock's agreement to check the system. If Hancock had refused to check the system it is not unreasonable to assume that the appellants would have considered obtaining security services elsewhere.
Under all the circumstances we are of the opinion that the trial court's exclusion of the conversation between Kidwell and Hancock relative to the oral agreement was erroneous.
Appellant sought to introduce evidence of freezing weather conditions during January, 1970, through an official publication of the United States Department of Commerce. The document is certified to be an official publication compiled from government climatological records. Seemingly, the trial court refused admission of the evidence on the ground that the document was not attested to by a person purporting to be the officer having legal custody of the record, or his deputy.
Rule 44 (a)(1), ARCP, provides that such records, if admissible for any purpose:
 ". . . may be evidenced by an official publication
thereof or by a copy attested by a person purporting to be the officer having the legal custody of the record, or his deputy." (Emphasis added.)
The publication should have been admitted. Wright and Miller, Federal Practice and Procedure, § 2433.
The judgment of the lower court is reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.