PER CURIAM.
This appeal challenges a judgment based on a directed verdict in favor of Defendant, granted at the close of Plaintiffs’ evidence, in a claim by the Terrys, as homeowners, against the City of Sheffield for damages allegedly caused by Defendant’s negligent construction or negligent maintenance of its sewer system.
The relevant facts and contentions of the respective parties are forthrightly and succinctly stated in briefs. We paraphrase Plaintiffs’ summary of the facts:
The City contracted with the Terrys to provide sanitary sewer service. The City undertook the maintenance of the sanitary sewer system which serviced the Terrys’ *390 property. The sewer in front of their property frequently flooded with rain, causing raw sewage to spew from the manhole cover and to disable the sewer. The sanitary sewer had overflowed, pouring raw sewage across the property, on numerous occasions over a 12-year period prior to the April 8, 1983, incident made the basis of this suit. The City was, and has been, on notice of the overflowing sewer throughout this period of time. The City, through its agents and employees, had observed the sanitary sewer overflowing and pouring upon the Terrys’ property on a number of occasions prior to April 8, 1983. No changes or modifications were ever made in the sanitary sewer system prior to April 8, 1983, even though the City was aware that it sometimes overflowed. On April 8, 1983, the flooded sanitary sewer backed up, and raw sewage poured upon the Terrys’ property.
Based upon these facts, the Terrys conclude:
“The sanitary sewer, if working properly, would not spew raw sewage from the manhole cover or back up on Plaintiffs’ property. The rain water from the storm sewer flooded the sanitary system in one of two ways, either through an intentional act of diversion of waters by Defendant or through negligent maintenance of the sanitary sewer so as to allow storm sewer waters to flood the sanitary sewer.
“Certainly from the facts adduced above, it can be inferred that Defendant was negligent in the maintenance of the sanitary sewer system and negligently allowed raw sewage to be cast upon the property of the Plaintiffs. Quite clearly these are logical and reasonable inferences to be drawn from the evidence presented at trial, especially in light of the evidence that the defect in the sewer was known to the City to have existed for many years prior to the April 8, 1983, incident, and that the City had taken no corrective measures with regard to the defect.”
In support of the directed verdict, the City summarizes its position:
“There was no evidence presented as to the cause of the overflow of sewage. There was no evidence presented that the City was in any way responsible for the overflow. There was no evidence as to how the overflow could have been prevented. There was no evidence presented that the City had maintained or constructed the sewer in an improper manner. In short, there was no evidence from which the jury could have inferred negligence if the case had been submitted for deliberation.”
The following colloquy from the record reflects the rationale for the trial court’s directed verdict:
“BY THE COURT: In this case you have just proven that it happened, that they knew it happened, or that the City knew that it could happen, but you haven’t shown that it got in there by some negligence either in the construction or the operation, because you haven’t had anybody tell me that. The two experts that you’ve had — well, really the only expert you have had, if you can call him an expert, is the City’s superintendent and he did not say that they had done anything negligently.
“MR. BLASINGAME [for the Plaintiffs]: He admitted, Judge, that somehow the storm sewer and water was getting mixed ...
“BY THE COURT: And he said it was caused by the rain. You have to prove that it was either negligently constructed or negligently maintained, and where is the proof for negligent construction? ... You have to prove that it was the City’s fault that it came in there.
“MR. BLASINGAME: I have proven all I can prove ...
“BY THE COURT: No, no, you could have hired an expert to come in and prove this and you didn’t do it and I don’t know how you can prove what size pipes they should have used, how they should have done it to maintain it to avoid this happening and that’s what I’m left in *391 limbo over. You’re just telling me it happened, that it had happened before and therefore [the City is] liable.”
It is apparent, then, from the facts, the contentions of the respective parties, and the reasons stated by the trial court for its ruling, that the ultimate issue here presented is whether, absent expert testimony on the issue of causation, the Terrys’ evidence furnished a reasonable inference from which a jury could conclude that Plaintiffs’ damages were proximately caused by the City’s negligence.
Not only is this not an issue of first impression, but it has been decided adversely to the City in a factual context practically identical to the instant case. In City of Birmingham v. Greer, 220 Ala. 678, 126 So. 859 (1930), the Court stated:
“When a city constructs or maintains sanitary sewers, it has been held in Alabama to be responsible for the careless and negligent manner in which it discharges that duty_ [I]f the city negligently provided or maintained an insufficient outlet for its sewage system and caused water and sewage to accumulate on property resulting in damage, it is liable. [Citations omitted.]
“... If therefore the city in time of floods negligently turned, or allowed, its storm waters to flow into the sanitary system with notice of the insufficiency of the county sanitary sewers to care both for the sanitary sewage and the storm waters, and if by reason of so doing the damage resulted to plaintiff as alleged in the complaint, we think it would be negligent maintenance of the sanitary sewage system as so alleged.
“If the city sanitary sewers, during the management of the city and by its authority or with knowledge of the conditions, had become overloaded, and thereby rendered tdo small for the service required of them, and the city allowed this condition to exist or continue after notice, when with reasonable diligence it could have remedied the condition, that would be a negligent maintenance. [Citations omitted.]
“... [Fallowing the advice of skilled engineers in [planning and executing a general system of drainage] is not a justification for the failure to exercise due care and not be negligent either in executing such plans or in maintaining the system after it is built. [Citations omitted.]
“Assuming that the city undertook [sewer] maintenance, it was a duty owing by [the city] to supply a remedy which experience may have demonstrated was needed.
“There were conflicting tendencies of the evidence. That for plaintiff that the sanitary system of the city was insufficient and had become inadequate in the section in which the property of [the Greers] was situated, known to [the city], or that storm waters were negligently or wrongfully allowed in them. For the city, that the condition was due to natural causes which could not be remedied with reasonable effort and engineering skill. The issue was therefore properly left to the jury.”
220 Ala. at 680-81, 126 So. at 860-61.
We note that the City does not challenge the Terrys’ reliance on Greer. The City does challenge, however, the Terrys’ reliance on Water Works & Sanitary Sewer Board of the City of Montgomery v. Norman, 282 Ala. 41, 208 So.2d 788 (1968).
The City contends that Norman is distinguishable from the instant case in that in Norman the plaintiff proved the specific cause of the flooding and the back-up of the sewer, while the Terrys adduced no evidence of the specific cause of the overflow. This contention, however, overlooks the Terrys’ evidence of the long history of ground water flowing directly into the manhole to the sanitary sewer line located in the street immediately in front of the Terrys’ property, as well as the City employee’s admission that water was getting into the sewer line.[1] The ultimate issue of *392 fact as to causation was a question for the jury. Handley v. City of Birmingham, 475 So.2d 1185 (Ala.1985).
The issues of negligence and causation, in a factually analogous context, were addressed in City of Birmingham v. Crane, 175 Ala. 90, 56 So. 723 (1911):
“Plaintiffs case was this: After a heavy rainfall, water stood over the roadway and sidewalks of defendant’s street. On previous occasions a like condition had frequently followed upon heavy rains. A ditch, three or four feet deep, running along the edge of the sidewalk, conducted the water to the mouth of a sewer pipe 18 inches in diameter. On the occasion in question, roadway, sidewalk, and ditch were hidden beneath the accumulated water which spread over them all. Plaintiffs intestate, a child under seven years of age, was wading about the street with other children when he stepped into the ditch, was drawn by the water into the unguarded mouth of the sewer pipe, and was drowned. To this case, and the inferences the jury were free to draw from these facts, it was no answer that the sewer had been constructed under advice of a competent engineer, or that the engineer still thought that the sewer was panned and constructed in accordance with the principles of good engineering. The defendant was under no obligation to provide an artificial underground system of sewers. But, having undertaken to provide such a system, it was defendant’s duty to see that a proper system was provided — one that would not leave the street in a dangerous condition. The question, then, for decision was whether under the conditions shown the accumulated water, or the accumulated water in connection with the unguarded sewer, sufficiently evidenced negligence on the part of the municipal authorities in the discharge of their duty to keep the street in a reasonably safe condition for the use of those who had occasion to pass along it for business or pleasure. This was an ordinary question of fact for the jury’s determination, and no witness, however expert, could properly be permitted to usurp the functions of the jury by expressing his opinion on that subject, for all the elements to be considered in determining the question at issue were open to the common understanding of the jury whose duty it was to draw the conclusion.” (Emphasis supplied.) 175 Ala. at 99-100, 56 So. 725-26.
Thus, because the settled law in this area mandates our reversal of the judgment for the City based upon the directed verdict, we reverse and remand the cause for a new trial.
For instructional purposes on retrial of this cause, we note that the amended complaint contained a claim that the City had breached “its contractual duty by negligently failing to properly maintain said sewage system.” In granting the City’s motion for directed verdict, the trial court concluded that “since your contract case is tied in with a negligent breach, I think it goes out just as well as a negligence case.” Therefore, because of this court’s reversal as to the negligence claim, the retrial of this cause will embrace both the negligence and the contract claims.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, SHORES and ADAMS, JJ., concur.

. Counsel’s use of the term "storm sewer,” from the earlier quoted colloquy, is an obvious inad *392 vertence. The record discloses that the City superintendent’s testimony was to the effect that ground water was getting into the sanitary sewer system.