The plaintiffs, Doyle and Barbara Wales, sued the Water Works and Sewer Board of the Town of Ardmore ("the Board") for negligently maintaining a sewer, after raw sewage filled their home. The Board appeals following a judgment for the Waleses. We affirm.
In April 1984, while cutting grass with a tractor on the street right-of-way, an employee of the Town of Ardmore Street Department struck the top portion of a manhole. The manhole is located across the street from the plaintiffs' home. The impact damaged the manhole, causing its cast iron ring to break. The impact also knocked the manhole cover onto the ground. The employee testified that he threw the broken pieces of the cast iron ring into the ditch and placed the manhole cover over the manhole. He then reported the incident and described the damage to the Board's superintendent. However, the Board did not inspect the manhole, nor did it attempt to repair the damage.
Approximately 16 months later, on Friday, August 2, 1985, raw sewage spewed into the Waleses' home. That happened as a result of a sewer back-up caused by broken pieces of the manhole's cast iron ring and pieces of concrete being lodged in the sewer. The sewage poured into the hall, kitchen, living room, and a back bedroom. At the time, Barbara Wales was at *Page 213 
home alone with the couple's minor children. She worked for two hours to clean up the mess. She claims to have become physically ill and nauseous as a result of handling and smelling the raw sewage. Barbara reported the back-up to the Board at around 3:00 p.m., that afternoon. It dispatched Billy Wales to inspect the situation. After arriving at the Waleses' house, Billy Wales removed the lid of the manhole and noticed that it was full of water. Billy Wales phoned the office and requested that it contact the Roto-Rooter Company, and have it to unstop the back-up. The Roto-Rooter truck arrived on Saturday, the following day. Therefore, raw sewage continued to flow into the Waleses' home on Friday night. The sewer line was finally cleared on Saturday afternoon.
The sewage back-up saturated the carpet and padding in the hall, living room, and back bedroom of the Waleses' home. The Waleses moved out of the house and worked for two weeks to remove the sewage, including solid human waste.
The Board's insurance adjuster made an inspection of the Waleses' damage. Evidence was presented to the trial court that a dispute arose between the Waleses' contractor and the Board's insurance adjuster concerning the needed repairs. Following his inspection, however, the Board's insurance adjuster issued two checks. One check was for $2,339.32. It was made payable to both Doyle Wales and his contractor. The second check was for $400.00. It was made payable to Doyle Wales. There is evidence that the plaintiffs' house remains damaged as a result of the sewage back-up.
The Waleses sued the Board for negligent maintenance of a sewer system and for wantonness. In response, the Board pleaded the affirmative defense of accord and satisfaction. The trial court entered judgment on the jury verdict for the plaintiffs after a jury awarded the Waleses damages of $21,000.00 on their negligence claim. It also awarded Barbara $20,000.00 for mental anguish. The Board appeals, following the trial court's denial of its motion for judgment notwithstanding the verdict or, alternatively, for a new trial or remittitur.
Five issues are raised for our review:
1. Whether the trial court properly submitted the Waleses' negligence claim to the jury.
2. Whether the trial court properly submitted Barbara Wales's claim for mental anguish to the jury.
3. Whether the trial court's denial of the Board's motion for directed verdict was proper on its affirmative defense of accord and satisfaction.
4. Whether the trial court's denial of the Board's motion for a new trial or a remittitur was proper.
5. Whether the trial court's order regarding remittitur complied with the Hammond v. City of Gadsden, 493 So.2d 1374
(Ala. 1986), directives.
 I.
We observe that in this state, no absolute liability stems from sewer system back-ups. Handley v. City of Birmingham,475 So.2d 1185 (Ala. 1985). Liability, if any, is measured by employing a negligence analysis. To recover, the complaining party must show 1) that the defendant undertook the duty to maintain a sewer system, 2) that he negligently discharged that duty, and 3) that the complaining party's damages resulted from the defendant's negligence. See Sisco v. City of Huntsville,220 Ala. 59, 60, 124 So. 95 (1929).
The Board maintains that the Waleses failed to show that it had notice of the situation creating the sewer back-up. Therefore, it argues that the trial court improperly denied its motions for directed verdict and judgment notwithstanding the verdict.
In Casey v. Jones, 410 So.2d 5, 8 (Ala. 1981), this Court said:
 "The standard of judicial review for testing a motion for directed verdict is identical to that for testing a motion for J.N.O.V. Evidence sufficient to take the case to a jury as against a motion for directed verdict is likewise sufficient to withstand a motion for J.N.O.V." *Page 214 
Under the controlling statutory provision, Ala. Code 1975, § 11-47-190, liability would attach to the Board if 1) an injury resulted from a condition caused by the Board's neglect, or 2) the Waleses' damage came about through the Board's neglect, carelessness or failure to remedy the defect after it had been called to the Board's attention.
We conclude that, based on the uncontroverted testimony, the trial court properly submitted the negligence issue to the jury. Briefly, that testimony was: an employee of the Town of Ardmore broke the cast iron ring of the manhole while cutting grass with a tractor; he threw broken pieces of the ring into the ditch and reported the incident to the superintendent of the water works; and the superintendent did nothing to check on the problem or to correct any defects that may have been caused by the employee's actions; over a year later, Barbara Wales called the Board when raw sewage spewed into her home; and Billy Wales, the present water works supervisor, testified that he responded to plaintiff Barbara Wales's call, that he removed the obstruction from the sewer, and that the pieces of the cast iron ring were the source of the sewage back-up.
We conclude that, if believed, there was ample evidence offered in support of an inference that the Board failed to discharge its duty to inspect and maintain the manhole upon adequate notice. Therefore, the cause was properly submitted to the jury. See Handley v. City of Birmingham, 475 So.2d 1185
(Ala. 1985).
 II.
The Board contends that the trial court erred by allowing the jury to consider evidence of mental anguish. We disagree. Under our prevailing case law, mental anguish was a proper element of Barbara Wales's damages claim.
Our cases have allowed recovery for mental anguish in a negligence case where there was some physical injury. Here, plaintiff Barbara Wales testified that she became nauseated and ill as the result of the sewage backing up in her home.City of Birmingham v. Estes, 229 Ala. 671, 673, 159 So. 201,201 (1935). See also B M Homes, Inc. v. Hogan, 376 So.2d 667
(Ala. 1979).
 III.
The Board argues that there was an accord and satisfaction. Therefore, it maintains, the trial court erred in denying its motion for directed verdict on this issue. The Board's affirmative defense of accord and satisfaction rests on assertions that Doyle Wales negotiated two checks that it issued. One check for $2,339.32 was drawn to the order of Doyle Wales and M L Contractors. A second check for $400.00 was drawn to the order of Doyle Wales. We are of the opinion that the fact pattern in this case was such that the trial court could not say, as a matter of law, that there was an accord and satisfaction. Under such circumstances, the court was correct in submitting this fact question to the jury. The jury found there was no accord and satisfaction.
 IV.
The Board argues that the jury verdict of $21,000.00 in compensatory damages for the Waleses and the $20,000.00 mental anguish award for Barbara Wales was excessive, in that it was the product of passion, bias, corruption, or other improper motive. It maintains that the trial court's failure either to grant a new trial or to remit a portion of the money awarded by the jury verdict, constituted reversible error.
Under our case law, a remittitur may be ordered upon a showing that the verdict is the product of bias, passion, prejudice, corruption, or other improper motive. B M Homes,Inc. v. Hogan, 376 So.2d 667 (Ala. 1979). In the present case, no improper motive is shown to have affected the jury's verdict, and the trial court acted properly in refusing the new trial or remittitur.
 V.
Our final consideration goes to whether the trial court adhered to the Hammond *Page 215 
directive of making a record of its reasons for upholding the jury verdict as not excessive. In Hammond, we said:
 "Only by requiring that a record be made can this Court adequately discharge its role of appellate review of trial court action in either granting or refusing to grant a new trial where remittitur is granted or denied."
Hammond v. City of Gadsden, 493 So.2d at 1379.
We have reviewed the trial court's findings, and we are of the opinion that they meet the standards set out inHammond.
For the foregoing reasons, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.