623 So.2d 1130 (1993)
Robert D. LONG and Judy L. Long
v.
JEFFERSON COUNTY.
1920146.
Supreme Court of Alabama.
July 30, 1993.
*1132 Mark E. Martin, Birmingham, for appellants.
Charles S. Wagner, Asst. County Atty., Birmingham, for appellee.
HOUSTON, Justice.
The plaintiffs, Robert D. Long and his wife, Judy L. Long, appeal from a summary judgment for the defendant, Jefferson County, in this action to recover damages for trespass and negligence. We affirm in part, reverse in part, and remand.
In 1973 the plaintiffs purchased a house in a subdivision in Jefferson County. A title examination made in 1973 by Chicago Title Insurance Company ("Chicago Title") failed to disclose that in 1902 the county had acquired an easement by condemnation across what is now the plaintiffs' property and that in 1907 the county had constructed an underground sewer on its easement. The petition for condemnation, the commission to assess damages, and the report of the commissioners were all recorded in the final record of the probate court.
The plaintiffs' house was built in 1939 directly over the sewer, and a cast iron pipe was installed in the floor of the basement through which sewage could be discharged directly into the sewer. The ground around and under the plaintiffs' house began to sink in October 1987, causing structural damage to the house. After being notified of the problem by the plaintiffs, county representatives inspected the plaintiffs' property and informed them that the county's sewer had collapsed. The county representatives also told the plaintiffs that the county had an easement across the plaintiffs' property and that the county would not assume responsibility for any of the damage. The county did reroute the sewer and it filled that section of the old sewer that ran under the plaintiffs' house with concrete to prevent further deterioration. The plaintiffs filed this action on October 25, 1989.[1]
Our standard of review in this case is well settled. The summary judgment was proper if there was no genuine issue of material fact and the county was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on the county to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. If it made that showing, then the burden shifted to the plaintiffs to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against them. In determining whether there was a genuine issue of material fact, we must view the evidence in the light most favorable to the plaintiffs and must resolve all reasonable doubts against the county. Knight v. Alabama Power Co., 580 So.2d 576 (Ala.1991). Because this case was not pending on June 11, 1987, the applicable standard of review is the "substantial evidence" rule. Ala.Code 1975, § 12-21-12. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989), citing Rowden v. Tomlinson, 538 So.2d 15, 19 (Ala.1988) (Jones, J., concurring). Simply stated, an issue is genuine if reasonable persons could disagree. Olympia Produce Co. v. Associates Financial Services of Alabama, Inc., 584 So.2d 477 (Ala.1991).
The following issues have been presented for our review:
1) Whether the county's sewer easement, acquired by condemnation in 1902, was valid as to the plaintiffs;
2) Whether the county acquired a sewer easement across the plaintiffs' property under the doctrine of prescription;
3) Whether the county owed a duty to the plaintiffs to exercise reasonable care in the *1133 maintenance and operation of its sewer system;
4) Whether the county is shielded from liability under the substantive immunity doctrine as discussed and applied in Rich v. City of Mobile, 410 So.2d 385 (Ala.1982); and
5) Whether the plaintiffs' claims are barred by the applicable statutes of limitations.
With regard to the first issue, the plaintiffs contend that the condemnation judgment was void as to them under Ala.Code 1975, § 35-4-90, which provides in pertinent part as follows:
"(a) All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors."
The plaintiffs argue that they were unaware when they purchased their house that it had been built above a sewer. They also maintain that the condemnation proceeding was not reflected in the real property records of the probate court and, therefore, that it was outside their chain of title and did not constitute constructive notice to them of the existence of the county's easement.
The plaintiffs rely on Fort Payne Water Works Board v. Sparks, 600 So.2d 230 (Ala. 1992), a case factually similar to the present case, in support of their argument that the county's condemnation proceeding was outside their chain of title and, thus, that it did not provide them with constructive notice of the county's sewer easement. In Fort Payne, this Court, relying on State v. Abbott, 476 So.2d 1224 (Ala.1985), held that the Sparkses did not have constructive knowledge of an easement that had been acquired by the water works board through a 1984 condemnation proceeding because there was no evidence of the condemnation proceeding in the "real property records" of the probate court when they purchased their property. Responding to the board's argument that the recording requirement of § 35-4-90 was satisfied because the petition for condemnation was recorded in the final record of the probate court and the condemnation judgment was recorded in the probate court minutes, this Court stated:
"Although the record in the present case reveals that the petition for condemnation was recorded in the final record of the probate court and that the condemnation judgment was recorded in the minutes of the probate court before the Sparkses purchased the property, the condemnation order was not recorded in the real property records of the probate court until June 3, 1988, when it was filed for recordation. Therefore, a search of the real property records prior to June 3, 1988, would not have revealed the existence of the easement. Consequently, we reach here a conclusion similar to that reached in Abbott: because the judgment of condemnation in which the prohibitive easement is contained was not recorded in the real property records of the probate court until after the Sparkses had purchased the property, the easement was outside the chain of title to the property, and the Sparkses, because they undisputedly purchased the property for value, cannot be held to have had constructive notice of the easement."
600 So.2d at 232.
In Abbott, the state was seeking enforcement of a right-of-way that it had acquired through a 1939 condemnation proceeding. The defendants had purchased the property in 1965, and they argued that they had not been provided with notice as to the existence of the right-of-way because the documents relating to the condemnation had not been recorded in the probate court at the time they purchased the property. Thus, in Abbott, through an oversight and contrary to the probate judge's specific instructions, the condemnation judgment was not filed for record in the probate court. The specific issue addressed in Abbott was whether a condemnation judgment was a "conveyance of real property" within the meaning of § 6887, Code of 1923 (now § 35-4-90). This Court concluded in Abbott that a condemnation judgment operates as a transfer of title to *1134 land from the landowner to the condemning authority upon payment of the required compensation, see Southern Natural Gas Co. v. Ross, 290 Ala. 195, 275 So.2d 143 (1973), and, as such, must be recorded in the probate court to be operative as to future purchasers for value. However, this Court did not hold in Abbott, as was suggested in Fort Payne, that a purchaser for value is not provided with constructive notice of a condemnation proceeding noted in the final record of the probate court. Consequently, Abbott does not support this Court's holding in Fort Payne.
Pursuant to Ala.Code 1975, § 35-4-50, "[c]onveyances of property, required by law to be recorded, must be recorded in the office of the judge of probate." (Emphasis added.) Section 35-4-51 provides in pertinent part:
"Except as may be otherwise provided by the Uniform Commercial Code, all deeds, mortgages, deeds of trust, bills of sale, contracts or other documents purporting to convey any right, title, easement, or interest in any real estate or personal property and all assignments of mortgages, deeds of trust or other securities for debt or extension agreements with respect thereto, when executed in accordance with law, shall be admitted to record in the office of the probate judge of any county. Their filing for registration shall constitute notice of their contents."
Section 35-4-58 states in part:
"Judges of probate are to procure, at the expense of their counties, large and well-bound books, in which must be recorded in a fair hand, or by printing the same, or by the use of a typewriter or other writing or printing, photograph or photostat machine, word for word, conveyances of property and all other instruments authorized to be recorded, with the acknowledgments, proofs, schedules, plats, surveys, etc., belonging thereto; and, at the foot or in the margin of the record of each conveyance or other instrument, the day of the month and year of the delivery of the same for record must be specified."
Section 35-4-63 reads as follows:
"The recording in the proper office of any conveyance of property or other instrument which may be legally admitted to record operates as a notice of the contents of such conveyance or instrument without any acknowledgment or probate thereof as required by law."
Although certain affidavits are specifically required to be recorded in the deed records of the probate court, see § 35-4-71, we can find no statutory requirement, other than as set out in § 35-4-131 and § 35-4-136, that a probate court record documents evidencing a condemnation proceeding in any particular record book. The legislature in 1971 amended Title 47, § 66, of the Alabama Code of 1940 (now § 35-4-131) so as to require that notice of a pending condemnation proceeding be filed in the lis pendens record of the probate court. The legislature also amended § 70 of that same title (now § 35-4-136) so as to require that notice of the resolution of the condemnation proceeding and of the "devolution" or passing of title to the land also be promptly noted in the lis pendens record. See Abbott at 1226-27.
Therefore, because the condemnation at issue in Fort Payne, which took place in 1984, was not noted in the lis pendens record of the probate court as required by statute, the result reached by this Court in that case was correct. However, there is no statutory basis for concluding that, before the legislature's action in 1971, evidence of a condemnation proceeding as shown by the final record of the probate court did not provide constructive notice of the condemnation proceeding. We conclude, therefore, that before the legislature's amendment of what is now § 35-4-131 and § 35-4-136 in 1971, condemnation proceedings, as reflected in the final record of the probate court, served to provide constructive notice to the world that title to the subject property either was, or, if the condemning authority's payment of the compensation is not noted in the record, could have been, transferred to the condemning authority. To the extent that Fort Payne is to the contrary, it is hereby overruled.
Although the record on appeal does not show whether a condemnation judgment was ever entered for the county, it does show *1135 that the petition for condemnation, the commission to assess damages, and the report of the commissioners were recorded in the final record of the probate court.[2] In White v. Boggs, 455 So.2d 820, 821-22 (Ala.1984), this Court, quoting Jefferson County v. Mosley, 284 Ala. 593, 599, 226 So.2d 652, 656 (1969), explained:
"[W]hatever is sufficient to excite attention and put the party on his guard and call for inquiry is notice of everything to which the inquiry would have led; ... one who has knowledge of facts sufficient to put him on inquiry as to the existence of an unrecorded deed is not a purchaser without notice within the protection of the registry statutes."
Charged by law with notice of the county's condemnation proceeding, the plaintiffs were charged with notice of everything that a reasonable inquiry would have disclosed. The probate court record reflected that the county was the condemning authority involved in the 1902 condemnation proceeding. The plaintiffs could have easily inquired of the county as to whether it had constructed a sewer on what later became their property.
Therefore, the plaintiffs were not purchasers for value without notice within the protection of § 35-4-90 and, consequently, the county's easement was not void as to them. The county was entitled to a judgment as a matter of law on the trespass claim.
However, the county has provided us with no authority that would support the proposition that the validity of the easement alone entitled it to a judgment as a matter of law on the negligence claim. The county, which did not raise the defenses of contributory negligence or assumption of the risk, and which did not submit any evidence indicating that the construction of the plaintiffs' house was illegal, was under a duty to exercise reasonable care in the construction and maintenance of sewers and drains under its control. See our discussion of the third and fourth issues, infra.
In light of our resolution of the first issue, the second issue is moot. In any event, we note that the county waived the second issue by not arguing below that it had acquired a sewer easement across the plaintiffs' property under the doctrine of prescription. It is a familiar standard of appellate review that issues cannot be raised for the first time on appeal. See Totten v. Lighting & Supply, Inc., 507 So.2d 502 (Ala.1987).
As for the third and fourth issueswhether the county was under a duty to exercise reasonable care in the maintenance and operation of its sewer system and whether the doctrine of substantive immunity shields the county from liability for damages arising out of the operation of its sewer systemthe county takes the position that it owed no duty to the plaintiffs to construct or maintain a sewer that would not collapse under the weight of a house. We note, however, that cities and counties are generally responsible for damage caused by the negligent operation and maintenance of sewers and drains under their control. See, e.g., Cook v. County of St. Clair, 384 So.2d 1, 5 (Ala.1980) ("[t]here is no restriction to the type of suit that may be brought against [a] countytort or contract"); see, also, Hilliard v. City of Huntsville, 585 So.2d 889 (Ala.1991); Waterworks & Sewer Board of the Town of Ardmore v. Wales, 533 So.2d 212 (Ala.1988); Terry v. City of Sheffield, 484 So.2d 389 (Ala.1986); City of Mobile v. Jackson, 474 So.2d 644 (Ala.1985); Brown v. City of Fairhope, 265 Ala. 596, 93 So.2d 419 (1957); City of Birmingham v. Estes, 229 Ala. 671, 159 So. 201 (1935); City of Birmingham v. Greer, 220 Ala. 678, 126 So. 859 (1930). In Rich v. City of Mobile, supra, a narrow exception to the general rule of municipal liability was recognized. In Rich, the doctrine of substantive immunity was held to apply to those cases involving public service activities of governmental entities that are "so laden with the public interest as to outweigh the incidental duty to individual citizens." *1136 410 So.2d at 387-88. The Court in Rich explained:
"We believe these public policy considerations, however, override the general rule and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.
"We readily acknowledge both the difficulty and the risk of error of any attempt to articulate the rule with that degree of definiteness which is easily applicable to varying factual situations. But this phenomenon is no stranger to the Rule of Law generally. We believe the wiser course is to allow the rule to evolve through the judicial process of trial and review on a case by case basis.
"We emphasize, however, that only the narrowest of constructions of our instant holding will avoid violence to [Ala. Code 1975,] § 11-47-190 and its Jackson [v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975),] interpretation...."
Id. at 387. Although Rich has not been limited to facts identical to those of that case, see, e.g., Hilliard v. City of Huntsville, supra; Ziegler v. City of Millbrook, 514 So.2d 1275 (Ala.1987), we have not been cited to a case (and our research has not disclosed one) in which the doctrine of substantive immunity, as discussed in Rich, has been specifically extended so as to apply to counties. Nonetheless, even if logic and public policy were to dictate such an extension of the doctrine, it would not shield the county from liability in the present case. Here, the plaintiffs have alleged and presented evidence tending to show that the county constructed its sewer with knowledge that houses would likely be built over or in close proximity to it. Obviously, houses were built over the sewer. The evidence suggests that the sewer was not designed or constructed so as to withstand the weight of a house for an extended length of time and there is no evidence that the county ever inspected or otherwise attempted to ascertain whether that section of its sewer that ran under the plaintiffs' house might need additional support or whether it might need to be rerouted around the plaintiffs' property.
In City of Mobile v. Jackson, supra, the plaintiffs sued the city to recover damages to their real and personal property caused by the overflow of a drainage system that flooded their property. Rejecting the city's argument that Rich was applicable under the facts of that case, we held:
"In Kennedy v. City of Montgomery, 423 So.2d 187 (Ala.1982), this Court held that pursuant to Code 1975, § 11-50-50, municipalities are authorized to construct and maintain drainage systems, and, while a municipality is not required to exercise this authority, once it does so, a duty of care arises and a municipality may be liable for damages proximately caused by its negligence.
"We find that the liability for negligent design or maintenance of drainage systems is analogous to that involved in the construction and maintenance of streets, alleys, or public ways or buildings, and, thus, that the city is not immune in this case."
474 So.2d at 649. Recently, in Hilliard v. City of Huntsville, supra, this Court cited with approval Town of Leighton v. Johnson, 540 So.2d 71 (Ala.Civ.App.1989). In Johnson, the city created the defect that caused the injury by knocking a hole in a manhole cover and thereby allowing raw, untreated sewage to flow into a drainage ditch near the plaintiff's property. Although this Court in Hilliard held that the immunity doctrine recognized in Rich protected the city from any liability from the alleged negligent inspection of electrical wiring in an apartment complex, we specifically distinguished Johnson. Noting that the Court of Civil Appeals had correctly ruled in Johnson that the narrow exception to the general rule of liability recognized in Rich was not applicable, we stated in Hilliard that the Court of Civil Appeals had "merely refused to hold that the substantive immunity rule changed the tort laws governing municipal operations." 585 So.2d at 892. Hilliard is consistent with City of Mobile v. Jackson, supra, and other cases in which municipal liability for negligence in the design *1137 or maintenance of sewer and drainage systems has been recognized. County commissions are authorized under Ala.Code 1975, § 11-3-11,
"[t]o expend money for the purpose of improving the sanitary conditions of the county by laying trunk lines of sewers and constructing sewage disposal plants in localities contiguous to thickly populated communities and to prescribe the terms on which the owners of houses or householders may connect with such lines of sewers...."
A county, like a city, is under a duty to exercise due care when it constructs and operates a sewage or drainage system, and it may be liable for damages proximately caused by its negligence. Because the doctrine of substantive immunity as recognized in Rich would not shield the county from liability, the county would not be entitled to a judgment as a matter of law based on that doctrine.
The last issue is whether the plaintiffs' claims are barred by the applicable statutes of limitations.[3] As previously noted, however, because the county's sewer easement was valid as to the plaintiffs, the county could not be liable for trespass. Consequently, we need not determine whether the plaintiffs' trespass claim was timely filed.
Under Ala.Code 1975, § 6-2-38(n), "[a]ll actions commenced to recover damages for injury to the person or property of another where a principal or master is sought to be held liable for the act or conduct of his agent under the doctrine of respondeat superior ... must be brought within two years" after the cause of action has accrued. A negligence cause of action accrues as soon as the plaintiff is entitled to maintain the action, i.e., at the time of the first legal injury, regardless of whether the full amount of damages is apparent. Watson, Watson, Rutland Architects, Inc. v. Montgomery County Bd. of Educ., 559 So.2d 168 (Ala. 1990); Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979). The record in the present case shows that the plaintiffs' negligence cause of action accrued sometime in October 1987, when the ground around their house began to sink. The plaintiffs filed this action on October 25, 1989. By not introducing evidence of the day in October 1987 on which the damage to the plaintiffs' property first occurred, the county failed to make a prima facie showing that it was entitled to a judgment as a matter of law on the negligence claim based on the statute of limitations.
Insofar as it pertains to the trespass claim, the judgment is affirmed. However, insofar as it pertains to the negligence claim, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS and KENNEDY, JJ., concur.
STEAGALL, J., concurs in the result.
ALMON, SHORES and INGRAM, JJ., concur in part and dissent in part.
INGRAM, Justice (concurring in part; dissenting in part).
The majority has concluded that, before the legislature's actions in 1971 (which required that condemnation orders, as well as notice of condemnation proceedings, be filed in the lis pendens records), condemnation proceedings, as reflected in the final record of the probate court, served to provide constructive notice that title to property was or could have been transferred to the condemning authority. I believe this issue has been squarely presented to this Court in State v. Abbott, 476 So.2d 1224 (Ala.1985), and has been decided to the contrary. Therefore, I must respectfully dissent.
In Abbott, this Court was confronted with the question "whether the State, by failing to record a condemnation order ..., can be *1138 divested of its title to a highway right-of-way under [Ala.Code 1975, § 35-4-90]." The condemnation order was dated December 21, 1939; therefore (because it was pre-1971) it was not required by statute (§ 35-4-136) to be recorded in the lis pendens record. In construing the recordation statute (§ 35-4-90) the Abbott Court held that (1) an order of condemnation is a conveyance of real property; (2) an order of condemnation is a transfer of title to real property; and (3) a mere entry of an order of condemnation is not sufficient notice that title to land has been transferred. Specifically, the Court held that § 35-4-90 included orders entered in condemnation proceedings, "even though the State of Alabama and the Alabama Power Company, as amicus curiae, both strongly insist that orders of condemnation have never been considered by them to be transfers of title which have to be recorded." 476 So.2d at 1226.
Justice Maddox, writing for the Court in Abbott, at 1228, concluded his analysis by noting that "[i]f our construction of § 35-4-90 is considered by the legislature to be contrary to its intent, the legislature is free to amend § 35-4-90 to specifically provide that orders of condemnation [prior to 1971] need not be recorded." As of this date, the legislature has not amended § 35-4-90.
In May 1992, writing for the Court, I authored Fort Payne Water Works Board v. Sparks, 600 So.2d 230 (Ala.1992). The facts in Fort Payne reveal that a condemnation judgment dated 1984 was noted in the "minute book" of the probate court. It was not, however, recorded in any of the real property records (nor was it recorded in the lis pendens record as required by Act No. 181, Acts of Alabama, Second Special Session, 1971) at the time of the sale of the land to the Sparkses, the purchasers for value. We held in Fort Payne that the easement was outside the purchasers' chain of title and that they did not have constructive notice of it.
In deciding Fort Payne, this Court looked to Abbott and § 35-4-90. We held that "because the judgment of condemnation in which the prohibitive easement is contained was not recorded in the real property records of the probate court until after the [purchasers] had purchased the property, the easement was outside the chain of title to the property." 600 So.2d at 232. However, as Justice Houston points out in the majority opinion in the present case, we could have simply held that because the condemnation judgment was entered after 1971, the case was controlled by Ala.Code 1975, § 35-4-136, which required that the order be recorded in the lis pendens record. Because this was not done in Fort Payne, the requirements of the statute were not met and the easement was outside the chain of title.
Nevertheless, I believe some of the statements in Fort Payne are dicta; but the holding is sound. Rather than holding that the easement was outside the chain of title, based on § 35-4-136, we based the opinion in Fort Payne on Abbott and its construction of § 35-4-90. We held that because the easement was contained only in the minute entry and was not recorded in the real property records of the probate court, the easement was outside the chain of title. I am satisfied that this is what Abbott said.
As noted above, I am at odds with the majority only concerning pre-1971 condemnation orders that have not been recorded in the real property records. The recordation statutes are designed to aid the general public in determining the title to property. They are to provide a means whereby one desiring to purchase land may ascertain if there is anything that affects the title to that land. Although I believe that a purchaser is under an obligation to dutifully search the records to determine an accurate history of the title of the property in question, I cannot find it in the public interest to require a search of every minute entry or file folder in the probate judge's office. In my opinion, this would be an onerous burden on the would-be purchaser. I do not believe that pursuant to § 35-4-90 the "final record" or "minute entry" in a condemnation proceeding constitutes notice to a purchaser for value. Rather, I believe that the better reasoned solution (as stated in Abbott) is that for a pre-1971 condemnation order to be considered within the chain of title, the condemnation order must be recorded in the real property record books. I am satisfied that that is the solution *1139 this Court adopted in Abbott when it construed § 35-4-90.
For this reason, I respectfully dissent from the majority opinion as it concerns the trespass claim against the County. As to the negligence claim, I concur.
ALMON and SHORES, JJ., concur.
NOTES
[1] The plaintiffs also named Chicago Title as a defendant, seeking damages for breach of contract, negligence, and wantonness. After the summary judgment had been entered for the county and made final pursuant to Rule 54(b), A.R.Civ.P., the plaintiffs proceeded to trial on their claims against Chicago Title. However, the trial court directed a verdict for Chicago Title at the close of the plaintiffs' case and the plaintiffs did not appeal the judgment entered on that directed verdict.
[2] Attached to the county's brief on appeal is a copy of what is represented to be the 1902 condemnation judgment in favor of the county, as recorded in the probate court minutes. Because this document is outside the record, we cannot consider it in determining whether the summary judgment for the county was proper. See Sheetz, Aiken & Aiken, Inc. v. Louverdrape, Inc., 514 So.2d 797 (Ala.1987).
[3] The county raised the statute of limitations defense in its answer to the plaintiffs' complaint, but it did not argue in support of its motion for summary judgment that it was entitled to a judgment based on that defense. However, the record indicates that the trial court specifically brought the issue up during the hearing on the motion and that the plaintiffs discussed the issue in a subsequent brief filed in support of their motion to vacate the summary judgment.