ROBERTSON, Presiding Judge.
On February 10, 1997, Judy Rodgers sued Jimmy W. Morris regarding an alleged oral contract by which she was to purchase from Morris a parcel of land and a house at 102 East Fontana Circle in Dothan (the parcel of land and the house will be referred to as “the property”). Rodgers alleged breach of contract, conversion, and misrepresentation. Rodgers also asserted claims arising from other business transactions with Morris. She also sought a temporary restraining order and a preliminary injunction to enjoin Morris from selling the property to anyone else. After various amendments to the pleadings, continuances, and attempts to add additional parties to the litigation, the trial court, on April 11, 2000, without stating a rationale, entered a summary judgment for Morris on all of Rodgers’s claims concerning the alleged oral contract for the purchase of the property. The court made that summary judgment final and appealable, pursuant to Rule 54(b), Ala. R.Civ.P., on the same day.
Rodgers appealed to the Supreme Court of Alabama; that court transferred the appeal to this court, pursuant to § 12-2-7, Ala.Code 1975.
During 1989, Rodgers operated a mobile-home dealership called “Best Value Destiny Homes” (“the business”); it was owned by her husband, Gene Rodgers, as a sole proprietorship. Although Rodgers was not paid a specific salary, she withdrew funds from the business by writing checks on the business account to pay her personal expenditures; she treated the funds taken from the business as her income. In the same year, Morris, who is Rodgers’s son, began working in the business. During. 1993, Rodgers began the process of divorcing her husband, and she discussed a plan with Morris whereby she would transfer her interest in the business into Morris’s name in order to avoid certain credit problems that she and her husband Gene had accumulated.
Rodgers testified that as a part of the division of the marital estate made pursuant to her divorce, she had had the business transferred to Morris upon her paying $60,000 to her husband, based upon her agreeing not to assert any other claims against her husband’s assets. Rodgers testified to having had an understanding with Morris that she would still be in control of the business; however, she also testified that she never had owned the business. Rodgers testified that she had signed the agreement conveying the business to Morris in January 1994; she stated that Morris did not execute the agreement until January 1995. Rodgers did not present any document memorializing, or any testimony concerning, the terms of the agreement that she says conveyed the business to Morris.
*972 Although in her brief Rodgers states in her statement of facts that she acquired the property at 102 East Fontana Circle and had negotiated to purchase it from its owner, Tony Johnson, as a result of her divorce in 1994, she also testified that she had acquired it during the summer of 1991. Johnson affirmed that Rodgers had inquired about purchasing the property, but he said that she had told him she did not want her husband to know that the property was in her name. Johnson affirmed that he sold the property to Morris on July 17, 1991. Johnson also affirmed that he was a certified public accountant who had been the accountant for the business since Morris had acquired the business in November 1994. Rodgers testified that she was unsure whether she could obtain financing to purchase the property, because of an outstanding judgment against her, so she had given Morris a check from the business in the amount of approximately $7,000 so that he could obtain the financing and purchase the property on her behalf. Although in her brief Rodgers contends in her statement of facts that she and Morris agreed that the property and the mortgage would be in his name but that she would make the payments and it would be her property, the only evidence in the record to support that contention is a statement by Johnson that he understood that Morris was buying the property but that it would be in Rodgers’s name. There is no written instrument concerning this agreement.
Rodgers testified that when she decided to put the business in Morris’s name during 1994, she had intended that the property be in both her name and Morris’s name so that it could serve as a basis for establishing the credit necessary for Morris to run the business. Since the purchase of the property, all payments concerning the property, including mortgage payments and utilities, have been made by payments from the business. Rodgers lived on the property until May 1995, when she moved to Atlanta, Georgia. Although she contends in her statement of facts that Morris had her forcibly removed from the property, she also testified that Morris never told her to leave the property. She gave further testimony indicating that she left the property voluntarily. The record also indicates that by September 1995, Rodgers was living in Marietta, Georgia, and was operating two mobile-home dealerships called “Affordable Southern Homes.” Rodgers purchased a house in Marietta in 1997, and she was living there when she filed this lawsuit.
The record also contains two letters from Morris to Rodgers. The first letter, dated July 5, 1996, stated that he intended to sell the property and that he would sell it to his mother for the amount of the outstanding mortgage and closing costs. The second letter, dated January 21, 1997, requested that Rodgers remove any personal items from the property so that it could be sold.
Although the record is obscure with respect to the underlying cause of the dispute over the property, it appears to have arisen in 1995, when the Internal Revenue Service investigated Rodgers’s business and determined that the business owed a significant amount of taxes. Rodgers and Morris disagreed on the responsibility for the tax liability — Rodgers contended that the business was liable for the taxes; Morris contended that Rodgers had incurred the tax liability and that she was therefore solely liable. The ensuing disagreements concerning ownership of the assets and responsibility for the debts incurred by the business led to the filing of this lawsuit. The validity of the partial summary judgment concerning the ownership of the property at 102 East Fontana Circle is the sole issue in this appeal.
*973 Our standard for reviewing a summary judgment is settled:
“A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala. R.Civ.P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required.”
Sizemore v. Owner-Operator Indep. Drivers Ass’n, Inc., 671 So.2d 674, 675 (Ala.Civ.App.1995) (citations omitted), cert. denied, 517 U.S. 1121, 116 S.Ct. 1354, 134 L.Ed.2d 522 (1996). Moreover, in determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County, 623 So.2d 1130, 1132 (Ala.1993). No presumption of correctness attaches to a summary judgment, and our review is de novo. Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025 (Ala.Civ.App.1993) (citing Gossett v. Turin County Cable T.V., Inc., 594 So.2d 635 (Ala.1992)).
Rodgers’s claims at issue in this appeal proceed from the premise that there was a valid and enforceable contract between Rodgers and Morris concerning the property. Thus, the application of § 8-9-2, Ala.Code 1975, Alabama’s Statute of Frauds, is critical to this case. In pertinent part, § 8-9-2 provides:
“In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
[[Image here]]
“(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller.... ”
It is undisputed that there was no written agreement between Rodgers and Morris concerning the conveyance of the property at 102 East Fontana Circle. However, Rodgers argues that there was an enforceable oral contract because, she says, she took possession and made payments on the purchase price. Viewing the record in a light most favorable to Rodgers, Long, supra, we note that there is considerable evidence indicating that Rodgers did write checks from the business for her own expenses. Thus, we conclude that there is substantial evidence creating a question of fact as to whether Rodgers made partial payments on the property, and the partial summary judgment cannot be affirmed on the basis of the Statute of Frauds.
Similarly, the partial summary judgment cannot be affirmed on the basis of a lack of consideration. See, e.g., Pingan v. Community Bank, 644 So.2d 919 (Ala.1994). As we have noted, Rodgers adduced substantial evidence indicating that she had made payments on the property, under her authority to write checks on the business account for her own benefit. It follows that there is a question of fact whether Rodgers gave consideration for the property, and thus, the partial sum *974 mary judgment cannot be affirmed on the rationale of a failure of consideration.
Finally, we consider whether the original oral agreement, an agreement by which Morris was to convey the property to Rodgers, was modified in 1994. Morris argues that the partial summary judgment in this case must be affirmed because there was evidence presented indicating that he and Rodgers agreed in 1994 that the property was to be shown as his asset for purposes of securing a line of credit for the business. Although the original oral agreement to convey the property was arguably executory and subject to modification, see Winegardner v. Burns, 361 So.2d 1054 (Ala.1978), the record does not contain evidence to show that the original oral agreement was invalidated by the subsequent modification so that Morris would be entitled to a judgment as a matter of law. We cannot conclude that there is no- question of fact concerning the extent of the 1994 modification, if any, of the original oral agreement. The evidence, viewed in a light most favorable to Rodgers, supports the inference that Rodgers and Morris agreed that the property would be shorn as Morris’s asset. The logical inference is that the parties recognized that the property was not solely Morris’s asset; thus, the evidence does not warrant a conclusion that the parties had changed their original oral agreement to vest full ownership in Morris.
We conclude that there is substantial evidence creating genuine issues of material fact concerning the existence of an oral agreement between Rodgers and Morris regarding the conveyance of the property, her possession of the property, and the extent to which Rodgers made payments on the property. Further, issues of fact also exist concerning the extent to which the original oral agreement to convey the property to Rodgers may have been modified in 1994. Accordingly, the partial summary judgment is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.