The main opinion relies upon Oliver v. Oliver, 431 So.2d 1271
(Ala.Civ.App. 1983), which held as follows:
 "This court has said that if there is an agreement between the parties and it is not merged or superseded by the decree of the court, it remains a contract between the parties and may be enforced as any other contract. However, any part of the agreement which is merged in the decree is subject to the equity power of the court and is no longer of a contractual nature."
431 So.2d at 1275 (emphasis added).
The main opinion thereafter concludes:
 "Here, when Murphy and Benvenuto executed the agreement to reduce Murphy's periodic-alimony payments after her remarriage, the agreement was contractual in nature and could be enforced like any other contract. However, when Benvenuto petitioned the Russell Circuit Court to incorporate the agreement into the divorce judgment, the agreement lost its contractual nature and became subject to the equity power of the court."
886 So.2d at 94 (emphasis added).
In Oliver v. Oliver, the final judgment of divorce incorporated an agreement between the parties containing provision for, among other things, the payment of alimony to the wife for a period of one year after her remarriage. The court inOliver was dealing with a modification entered into by the parties after the final judgment of divorce, reducing the amount of alimony payable. The subsequent agreement did not in any way relate to the pre-divorce agreement, incorporated into the final judgment, providing for payment of alimony after the former wife's remarriage. Consequently, the statement in Oliver that an agreement merged into the judgment loses its contractual status arose in the context of an agreement made before the entry of the final judgment of divorce to continue to pay alimony after the former wife's remarriage. It appears from the *Page 96 
facts here presented that the agreement to pay alimony after remarriage was entered into after the final judgment of divorce was entered.
The trial court in Oliver heard ore tenus evidence concerning the agreement to modify the amount of the alimony obligation and then referred to the transaction as having modified the original judgment. The Court of Civil Appeals described that reference as "confusing and unfortunate." The court then stated:
 "At first impression it may be thought that that finding is contrary to the decision of the Alabama Supreme Court in the case of Holland v. Holland, 406 So.2d 877 (Ala. 1981)[,] and the yet unpublished decision in the case of Ex parte Eugene Smith, Jr., 429 So.2d 1050 (Ala. 1983). The court held in those cases that a final judgment may not be modified or amended by a subsequent agreement between the parties. Of course that holding is the law. Only the court may modify or amend its final judgment. However, we do not understand that holding to mean that the parties by agreement may not waive or release, in part or in entirety, their rights to the benefits granted by such judgment. Such waiver, satisfaction, credit or release of judgment by subsequent contract is common at law or in equity. Any right held by a party, whether by judgment or otherwise, may be the subject of contract to alter, exchange, waive, sell or satisfy. 15A C.J.S. Compromise and Settlement § 23; Winegardner v. Burns, 361 So.2d 1054 (Ala. 1978); Watson v. McGee, 348 So.2d 461 (Ala. 1977). Whether there was such a contract with consideration was an issue of fact in this case. The finding of the court that by agreement the wife waived or compromised her right to the full amount of alimony and accepted the lesser amount of $700.00 per month is supported by evidence presented. Though referring to the divorce decree as being modified by agreement, the trial court also found that the wife waived the full amount by agreement. The finding of waiver by agreement viewed with a presumption of correctness is affirmed. McGaha v. Steadman, 410 So.2d 420 (Ala.Civ.App. 1981)."
431 So.2d at 1274.
Under that analysis, an agreement entered into after a divorce judgment is entered cannot require the court to modify that judgment. However, if a valid agreement has been entered into, the rights thereby created may be enforced as a contract. While the trial court could not modify its judgment of divorce in violation of § 30-2-55, Ala. Code 1975, it could nevertheless recognize an enforceable contract. The trial court in this proceeding conducted a hearing on Benvenuto's petition to modify the final judgment of divorce to incorporate the agreement. In its order, the trial court recognized the existence of a contract as follows:
 "Therefore, it is the order of this court that an integrated bargain now exists between the parties
and it is ordered, adjudged, and decreed
 "That permanent periodic alimony to be paid by [Murphy] to [Benvenuto] is set at $300.00 per month as of the date of [Benvenuto's] marriage."[2]
(Emphasis added.)
I would deal with Benvenuto's attempt to characterize the proceeding to enforce her agreement as a modification of the *Page 97 
divorce judgment as "confusing and unfortunate," but, as the court implicitly held in Oliver, not fatal to the contract rights of the parties to the post-divorce agreement. I would limit that portion of Oliver holding that "any part of the agreement which is merged in the decree is subject to the equity power of the court and is no longer of a contractual nature,"431 So.2d at 1275, to the context in which that statement was made — agreements entered into before the entry of the final judgment of divorce.
In conclusion, had there been no agreement entered into after the final judgment, § 30-2-55 would have required the trial court to modify its final judgment of divorce by discontinuing the obligation of the former husband to pay periodic alimony based upon the former wife's remarriage. However, the subsequent agreement to continue payment of alimony after the former wife's remarriage should be recognized as an enforceable contract, and not as a modification to the final divorce judgment, just as the trial court did in this proceeding.
I must therefore respectfully dissent.
[2] Although Benvenuto remarried on December 1, 1999, the parties' agreement contained a stipulation that "in no event shall this agreement take force prior to January 1, 2000."