Thirteen residents of the City of Prichard and the estate of a deceased resident[1] sued the City and the Water Works and Sewer Board of the City of Prichard ("Board") for damages, based on harm they had suffered as a result of a defect in the sanitary sewer system operated by the Board; that defect causes sewage to overflow into their yards and homes after periods of heavy rain.[2] The trial court entered a summary judgment for the City of Prichard, and the case proceeded solely against the Board. A jury returned a verdict holding the Board liable for its failure to correct the problem of the overflowing sewage and awarding damages to each plaintiff. The trial judge's order entered following his post-verdict review of the damages award, conducted pursuant to Hammond v. City of Gadsden,493 So.2d 1374 (Ala. 1986), sets forth the procedural history of the case and the damages awarded by the jury:
"Procedural History
 "This complaint was filed by various residents of the West Highland Avenue area on December 22, 1995. It sought recovery against the City of Prichard and the Board of Water and Sewer Commissioners of the City of Prichard on various theories, including negligence, wantonness, and trespass related to discharge from the sewer system both inside and outside of their homes.
 "Defendant City of Prichard's Motion for Summary Judgment was granted on January 22, 1996, and the case proceeded to trial on January 29, 1996, against the sole [remaining] Defendant, the Board of Water and Sewer Commissioners of the City of Prichard (hereinafter, 'Board'). On February 2, 1996, the jury returned a verdict in favor of the fourteen . . . plaintiffs and against the Board in the amounts as follows:
 Mental Property Plaintiff Anguish Damages Punitive
James W. Carson $35,000 $34,800 $35,000 Estate of James Davis $ 0 $ 0 $35,000 Estelle McDaniel $20,000 $ 7,650 $35,000 Johnnie Davis $ 2,500 $ 0 $35,000 Randolph Singleton $25,000 $12,540 $35,000 Daisy Lee Robinson $35,000 $24,750 $35,000 L. T. Vaughn $35,000 $12,470 $35,000 Emanual Jackson $ 0 $ 5,490 $35,000 *Page 1202 
Ella Seales $35,000 $20,000 $35,000 Annette Austin $20,000 $10,800 $35,000 Cleveland Hubbard $25,000 $14,450 $35,000 Delfrey Williams $20,000 $ 8,700 $35,000 Anthony France $15,000 $11,480 $35,000 Lennell Gaillard $15,000 $16,700 $35,000
 "In total, plaintiffs' damages [awarded by the jury] reached $282,500 in mental anguish damages, $179,830 in [compensation for property damage], and $490,000 in punitive damages, for a total verdict of $942,330."
After conducting a hearing pursuant to Hammond v. City ofGadsden, the trial judge ordered a remittitur of each of the 14 punitive damages awards to $5,000 each. He also reduced the total award for property damage to $100,000. This resulted in a judgment awarding a total of $282,500 in damages for mental anguish, a total of $100,000 for property damage, and a total of $70,000 in punitive damages, for a total of $452,500 in damages.
The plaintiffs appeal, contending that the trial court erred in capping the property damage award at $100,000 and in ordering a remittitur of punitive damages from $35,000 per plaintiff to $5,000 per plaintiff. The residents also question the summary judgment for the City of Prichard. The Board cross appeals, contending, first, that the plaintiffs failed to prove that the sewage-overflow damage was proximately caused by the Board, and, second, that the Board, as an agency performing a governmental function for the City of Prichard, is not liable for punitive damages, relying on § 6-11-26, Ala. Code 1975.
 I.
We first consider the Board's contention that the residents failed to prove that the Board breached any duty or that the Board's breach of any duty was the proximate cause of the harm suffered by the residents. The Board contends that the residents' problems were caused by the inflow and infiltration of surface water into the sewage system through "open laterals" on private property. Although the Board admits that it has a duty to provide water and sewer service to the people in the affected areas, it does not agree that the residents proved that the problems in the sewer service were a result of the Board's action or inaction. The Board argues that the court should have granted its motions for a directed verdict made at the close of the residents' case and again at the close of all of the evidence, and, having denied those motions, should have granted its motion for a judgment notwithstanding the verdict.[3]
The plaintiffs' claims were based upon negligence, liability for which must be based on proof 1) that the defendant undertook the duty to maintain a sewer system, 2) that it negligently discharged that duty, and 3) that the plaintiffs suffered harm or loss as a result of the defendant's negligence. Water Works Sewer Board of the Town of Ardmore v.Wales, 533 So.2d 212 (Ala. 1988), citing Sisco v. City ofHuntsville, 220 Ala. 59, 60, 124 So. 95 (1929). In this case the alleged negligence was in the Board's failure to properly operate and maintain the sewer system. There was ample evidence from which the jury could have determined that the Board negligently designed and/or maintained the sewer system. The residents presented evidence that they had suffered, and continued to suffer, from the overflow of raw sewage into their yards and homes after periods of heavy rain. They alleged various types of injury, including mental anguish, emotional distress, annoyance, and inconvenience. All of them complained that the overflow caused debris and waste from the *Page 1203 
sewer system to enter their yards. One plaintiff testified that he had had snakes in his house as a result of the sewage overflow. The sewage overflowed from manholes in the street. According to the residents, the odor from the sewage overflow was so great that they could not eat in their homes and were embarrassed to have visitors. The residents complained to the Board's system superintendent. He commissioned an engineer to study the problem, but the Board was slow to act on the engineer's recommendations. According to the residents, the Board's commissioner "kept removing [the sewer discharge problem] from the Board's agenda," even though the Board knew the problem was causing a health hazard.
Larson D. Edge, a real estate appraiser, testifying as an expert witness, testified that "the [plaintiffs'] houses have no market appeal at all." He stated:
 "These houses suffer from what you call in the appraisal business economic obsolescence or external obsolescence. It's things which are outside the property but influence the value of the property. The property owners can't do anything about the flooding so that influences their property. It has an adverse affect on their property. It's economic obsolescence. It depreciates their property."
He gave as an example the house at 522 Messer Street, which he values at $24,500. He stated that, because the house has had sewage in it several times, "there's a stigma attached to that property" and "I don't think the house has any value." As for the house at 530 Messer, he stated that the value of the house had been $21,500, but the value now is $2,600, a loss of $18,900 in value due to the flooding by sewage. Edge testified that 13 of the plaintiffs had experienced a loss in the value of their property, the smallest loss being $5,000 and the highest being $35,000.
 " 'A strong presumption of correctness attaches to a jury verdict in Alabama, if the verdict passes the "sufficiency test" presented by motions for directed verdict and JNOV. Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990); Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160 (Ala. 1988). This presumption of correctness is further strengthened by a trial court's denial of a motion for new trial. Christiansen, 567 So.2d at 1341. Denying a motion for new trial is within the sound discretion of the trial court. See, Hill v. Cherry, 379 So.2d 590 (Ala. 1980). This Court will not reverse a judgment based on a jury verdict on a sufficiency-of-the-evidence basis unless the evidence, when viewed in a light most favorable to the nonmovant, shows that the verdict was "plainly and palpably wrong and unjust." Christiansen, 567 So.2d at 1341.' "
American Nat'l Fire Ins. Co. v. Hughes, 624 So.2d 1362, 1367
(Ala. 1993) (quoting Attalla Golf Country Club, Inc. v.Harris, 601 So.2d 965, 970 (Ala. 1992)). Having reviewed the record in this case, we cannot say that the verdict was plainly and palpably wrong and unjust. There was substantial evidence from which the jury could find that the Board had been negligent and that the plaintiffs had suffered damage as a result of the Board's negligence.
 II.
We next consider whether the trial court erred in holding that the Board was entitled, as a matter of law, to have the jury awards for property damage (awarded to the 14 plaintiffs) remitted from an aggregate of $179,830 to an aggregate of $100,000 on the grounds that the discharge of sewage onto the plaintiffs' land and into their homes on more than a dozen occasions constituted a single occurrence for purposes of §11-93-2, Ala. Code 1975.
Section 11-93-2 provides as follows:
 "The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence. Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property *Page 1204 
arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth."
The trial judge was correct in stating that the controlling law is found in the case of Home Indemnity Co. v. Anders,459 So.2d 836 (Ala. 1984). In Home Indemnity the City of Mobile sought a declaratory judgment determining its liability under §11-93-2 to numerous flood victims, who had pending against the City actions seeking compensation for property damage. Id. at 839. The trial judge held that § 11-93-2 contained a $100,000 per-occurrence limitation on the aggregate amount ofcompensation for property damage for which a governmental entity could be liable. Id. Reversing that part of the judgment, this Court held that each flood victim would be entitled to satisfy his judgment up to $100,000 for everyoccurrence. Id. at 841-42. Because the Court's discussion of that issue was so cogent and is applicable in this case, that discussion is set forth here in full:
"Aggregate Limitation
 "Next, the flood victims contend that § 11-93-2
does not contain an aggregate limitation on the recovery of property damages when multiple judgments are returned as the result of a single occurrence. A close examination of § 11-93-2
compels us to agree. [At this point the court quoted § 11-93-2 in a footnote.] The first sentence of § 11-93-2 sets the recovery limit for bodily injury or death for one person in any judgment
arising from a single occurrence. The second sentence sets the recovery limit for bodily injury or death for more than two persons under any judgment or judgments arising out of a single occurrence. The third sentence sets the recovery limit for property damage under any judgment
arising out of a single occurrence.
 "The first and third sentences are identical except for the fact that the first applies to bodily injury or death and the third applies to property damage. Conspicuous by its absence is a [fourth] sentence similar to the second sentence which would limit recoveries for property damage under any judgment or judgments arising out of a single occurrence.
 "If the Legislature had intended to create an aggregate limitation on recovery of property damages it could easily have done so. 'The maxim of expressio unius est exclusio alterius, when coupled with the ease of inclusion if such had been intended,' requires that we find no aggregate limitation exists. Adams v. Mathis, 350 So.2d 381, 386 (Ala. 1977).
 "We reject the City's and [Home Indemnity's] argument that to give effect to the legislative intent as expressed in the preamble — '[t]o prescribe and establish monetary limits . . . on tort liability' — we should read 'any judgment' in the third sentence of § 11-93-2 to mean 'all
judgments.' We note first that even without an aggregate limitation on property damages, the act does provide monetary limits on tort liability for property damage under any judgment. They argue that without a cap on the total liability for property damage under multiple judgments the intent of the legislature is unfulfilled. Such an argument is unsound. The preamble to Act 673 does not purport to establish the maximum liability of local governmental entities under all circumstances.
 "The cases cited by the City and [Home Indemnity], Centennial Associates v. Clark, 384 So.2d 616 (Ala. 1980), and Fuller v. Associates Commercial Corp., 389 So.2d 506 (Ala. 1980), in support of their argument that 'any' should be interpreted as 'all' do not support their argument in this case. In Fuller we said, '[W]here statutory language is plain and unambiguous the statute should be given the meaning therein plainly expressed.' Id. at 508. See also, State v. Dawson, 264 Ala. 647, 89 So.2d 103 (1956) (when the language is plain and unambiguous and the meaning obvious, there is no room for construction). We find no ambiguity which requires us to construe the statute."
459 So.2d at 841-42 (emphasis in original).
This Court defined the phrase "one occurrence" in UnitedStates Fire Insurance Co. v. Safeco Insurance Co.,444 So.2d 844 *Page 1205 
(Ala. 1983), wherein we concluded that "[a]s long as the injuries stem from one proximate cause there is a single occurrence." Id. at 846 (quoting Appalachian Ins. Co. v.Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982)). The "occurrence" that triggered liability in this case was the overall failure of the Board to remedy the problems stemming from its sewage system, and, although there were numerous incidents of sewage overflow, the failure of the Board to remedy the overflow was a "single occurrence" within the meaning of § 11-93-2.
However, despite the fact that we hold there was a single occurrence, Home Indemnity very clearly states that § 11-93-2
does not limit all plaintiffs who suffer property damage as a result of a single occurrence to an aggregate recovery of $100,000. Home Indemnity was decided in 1984. If the legislature had been concerned about the liability that could result from the absence of an aggregate limit, it easily could have amended § 11-93-2 by conforming the language in the property-damage provision to the language in the personal-injury provision. The legislature has not done so, however, in the 13 years since Home Indemnity was decided.
Each of the 14 separate awards based on property damage is easily within the limit of § 11-93-2. We therefore hold that the jury's verdict in favor of the 14 plaintiffs, awarding them a total of $179,830 for property damage is due to be reinstated and a judgment entered thereon.
 III.
We next consider the Board's argument that the trial court erred in failing to grant its motion to strike the punitive damages claims against it. The Board argues that § 6-11-26, Ala. Code 1975, provides that punitive damages may not be awarded against any county or municipality or any "agency thereof" and that as to the City of Prichard the Board is an "agency thereof," in the sense of its performing a governmental function. Section 6-11-26 provides:
 "Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6-5-480 et seq., or any acts amendatory thereto."
Ala. Code 1975, § 11-93-1, defines the term "governmental entity" as follows:
 "(1) GOVERNMENTAL ENTITY. Any incorporated municipality, any county and any department, agency, board or commission of any municipality or county, municipal or county public corporations and any such instrumentality or instrumentalities acting jointly. . . ."
In City of Montgomery v. Water Works Sanitary Sewer Boardof the City of Montgomery, 660 So.2d 588 (Ala. 1995), this Court held that a water and sewer board, created by a municipality as a public corporation, was a "municipal board, committee or like body" within the meaning of legislation authorizing class-three municipalities to alter the membership of municipal boards, committees, or like bodies. Justice Maddox wrote for the Court:
 "It has been held that a water and sewer board is an administrative agency and performs city functions. See International Union of Operating Engineers, Local Union No. 321 v. Water Works Board, 276 Ala. 462, 463, 163 So.2d 619, 620
(1964). Although the Water and Sewer Board is a corporation, it is so organized to perform its functions as an agency of the City. Accordingly, such a board is treated in the same light as the City itself. See State ex rel. Richardson v. Morrow, 276 Ala. 385, 162 So.2d 480 (1964). A member of the Water and Sewer Board could be considered an officer of the City. See Roberts v. Fredrick, 295 Ala. 281, 328 So.2d 277 (1976). The mere fact that an administrative agency is organized as a corporation does not necessarily deprive it of the qualities of a governmental agency. See Opinions of the Justices, No. 45, 235 Ala. 485, 179 So. 535, 536 (1938)."
660 So.2d at 594. In City of Montgomery v. Water Works Sanitary Sewer Board, we stated further that a water and sewer board providing services to the citizens of a municipality, even if it is established as a separate corporation, can be an "agency" of the municipal *Page 1206 
government with regard to the provision of those services.
In Marshall Durbin Co. v. Jasper Utilities Board,437 So.2d 1014 (Ala. 1983), the Marshall Durbin Company, a sewer and gas customer, brought a declaratory judgment action against the Jasper Utilities Board. Like the Board in this case, the Jasper Utilities Board was incorporated and its members were appointed by the governing body of the municipality. Id. at 1018. This Court held that the Jasper Utilities Board acted as an agent of the municipality, performing the governmental function of setting rates for utility services. Id.
This Court has held that the supplying of water to a city and its inhabitants is a municipal function and that a water works board incorporated under the provisions of Title 37, §§ 394-402, Code of Alabama 1940, is in that sense an agency of the city. Water Works Board of the Town of Parrish v. White,281 Ala. 357, 362, 202 So.2d 721, 725 (1967), citing Jackson v.Hubbard, 256 Ala. 114, 53 So.2d 723 (1951). In Jackson the Court held that supplying water to the City of Auburn was a municipal function and that "the Water Works Board of the City of Auburn is in that sense an agency of the city."256 Ala. at 119-120, 53 So.2d at 728. The Board in the present case was incorporated under Title 37, § 402.
In 1938, the Justices were asked to respond to the Governor's inquiry as to whether the real and personal property of housing authorities created under the Act of 1935 would be exempt from ad valorem taxation. The Justices responded:
 "It is clear that if the power conferred by the act in question were conferred on the city proper, the property made subject to its terms would be exempt under section 91, Constitution. When the city is performing a governmental function, it is none the less so because it is done by the instrumentality of some administrative agency, such as a board, commission, or even a corporation set up for that purpose, created by or for the city's use in that connection.
 "The mere fact that it is a corporation does not deprive it of the qualities of a governmental agency, nor of the immunities of the government for which it operates. Alabama Girls' Industrial School v. Reynolds, 143 Ala. 579, 42 So. 114; Alabama Industrial School v. Adler, 144 Ala. 555, 42 So. 116, 113 Am.St.Rep. 58; Cox v. Board of Trustees of University of Alabama, 161 Ala. 639, 49 So. 814; White v. Alabama Insane Hospital, 138 Ala. 479, 35 So. 454.
 "The Housing Authority is an administrative agency of a city, and its property is therefore for certain purposes that of a municipal corporation and is entitled to the tax exemption of section 91, Constitution."
Opinions of the Justices, No. 45, 235 Ala. 485, 486,179 So. 535 (1938).
This was the law in existence when § 6-11-26 was passed. The Legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute. Ex parteLouisville N.R.R., 398 So.2d 291, 296 (Ala. 1981).
The Board is a public corporation organized for the purpose of providing water and sewer service to the citizens of Prichard. The Prichard City Council appoints the members of the Board, and one member of the Council actually sits on the Board. The broad language in the definition of the term "governmental entity" in § 11-93-1; the public policy of protecting governmental entities from punitive damages, a policy supported by § 11-93-2; and the cases cited in City ofMontgomery v. Water Works Sanitary Sewer Board of the City ofMontgomery, all support the Board's position that it is a "governmental entity," as that term is defined by § 11-93-1. As an agency performing a governmental function for a municipality, it is therefore not subject to punitive damages under § 6-11-26, and that portion of the judgment awarding punitive damages to the residents is due to be reversed, and the Board is entitled to a judgment in its favor as to all claims for punitive damages.
 IV.
We next consider the residents' contention that the trial court erred in refusing to address or rule on their request for a *Page 1207 
mandatory injunction requiring both the City and the Board to solve the sewer discharge problems. It is settled law that whether to grant or to deny injunctive relief rests in the sound discretion of the trial court and that the trial court's ruling on that question will not be set aside unless that court has abused its discretion. Acker v. Protective Life Ins. Co.,353 So.2d 1150 (Ala. 1977). In addition, courts will not use the extraordinary power of injunctive relief merely to allay an apprehension of a possible injury; the injury must be imminent and irreparable in an action at law. United Services Auto.Ass'n v. Allen, 519 So.2d 506, 508 (Ala. 1988).
As previously noted, the case proceeded to trial against only the Board. Although the trial judge did not grant the requested mandatory injunction, the record reflects that the judge fully considered the question and did not abuse his discretion in declining to issue an injunction, on the basis that a consent judgment was in effect. In his post-trial order, entered after the Hammond hearing, the trial judge mentioned a civil lawsuit brought by the attorney general of Alabama against the Board based on the entire sewage collection system for the City of Prichard, seeking to force the Board to make repairs and address the inflow and infiltration problems that are the subject of this lawsuit. The judgment to which the parties consented in that case was entered into evidence in this case. It includes a compliance schedule, with the goal being completion of all repairs by 2002. The trial judge concluded that the problems are being remedied:
 "The Board's efforts for the future appear to be in good faith because 1) the Board has entered into the agreement with the Attorney General to remedy the problems by 2002, and 2) the Board has earmarked $2.5 million in bonds for the project."
The trial judge stated in his "Hammond Order" why he had concluded that it was likely that the Board would comply with the consent judgment:
 "Under the complaint and consent order filed by the Attorney General's office, the Board will have to pay a penalty of at least $44,600. At maximum, it could range up to $11,000,000 or more. For failure to abide by the compliance order of the consent decree, penalties assessed would be on a per diem basis for every day not in compliance."
We hold that the judge did not abuse his discretion by declining to issue an injunction against the Board.
 V.
Finally, we consider whether the trial court properly entered the summary judgment for the City of Prichard. In granting the City's motion for summary judgment, the trial court determined that there was no genuine issue of material fact as to whether the City was liable for the harm to the plaintiffs. In granting the City's motion for summary judgment, the court determined that the City had not undertaken to provide a storm water drainage system for the neighborhood in question and that the plaintiffs had failed to demonstrate a "tie-in" between the city-wide drainage system and the sanitary sewer system. Consequently, the court determined that the plaintiffs had not presented substantial evidence indicating that the City had breached any duty owed to the Prichard residents. The trial judge's order on the plaintiffs' motion for a new trial or to vacate the summary judgment states his conclusion:
 "This Motion is another attempt by the plaintiffs to revisit the Order of January 22, 1996, by this Court [granting] the City's Motion for Summary Judgment. The arguments of counsel and evidence pertaining to the City of Prichard were heard by this Court on more than one occasion. Plaintiffs assert a theory of a tie-in between the storm water drainage system maintained by the City and the sewer system managed by the Board. Plaintiffs could present no substantial evidence of such a tie-in, and the uncontroverted evidence was and still is that the City does not even maintain a storm water drainage system in the area of plaintiffs' homes. In accordance with the line of cases holding that the city cannot be liable for flooding problems when it has not undertaken *Page 1208 
to maintain a flood control system, this Court granted the City of Prichard's Motion for Summary Judgment, and now rules the same with regard to the plaintiffs' present Motion."
The trial court granted the City's motion for summary judgment after considering the affidavits of several witnesses, who testified that the City had never attempted to construct a storm water drainage system for the area where the overflows occurred. These witnesses testified that the drainage system in that area was merely a naturally flowing system of water running from the highest point on the street to the lowest point. The trial judge also had before him evidence indicating that the City of Prichard had been permanently enjoined by an order of the Mobile County Circuit Court from any interference with the operations of the Board.
The residents relied upon the "Engineer's Facility Evaluation" of April 1993, made by David Volkert Associates, Inc., in which the engineers, describing the Sanitary Sewer Collection System in Prichard, state: "Years ago street storm drains were connected to the sanitary sewer system to form a common collection system and a problem known as Inflow. In recent years, this practice has decreased because of the burden it places on the sanitary sewer collection system when it rains." However, the City presented an affidavit from Nelson Russell, an engineer with David Volkert Associates, Inc., in which Russell stated that he was not aware of any connection or tie-in between the lines of the sanitary sewer system and the lines of the storm water drainage system of the City of Prichard. He concluded his affidavit by stating that "a direct tie-in or connection between the two systems has never been identified."
We observe that in this state no absolute liability stems from sewer system back-ups. Water Works Sewer Board v. Wales,533 So.2d 212 (Ala. 1988). As stated above, liability, if any, is measured by employing a negligence analysis. See: Terry v.City of Sheffield, 484 So.2d 389 (Ala. 1986); City ofBirmingham v. Greer, 220 Ala. 678, 126 So. 859 (1930). Although the plaintiffs have made an impassioned argument for the proposition that the City should have corrected the problems with their drainage, they have shown neither that the City undertook control of the drainage on their properties nor that the damage done to their property was caused by "tie-ins" between the City's other drainage systems and the sewer system.
We review the evidence in the light most favorable to the nonmovant, and we must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412,413 (Ala. 1990); Harrell v. Reynolds Metals Co.,495 So.2d 1381, 1383 (Ala. 1986); Wilson v. Brown, 496 So.2d 756, 758
(Ala. 1986). However, the plaintiffs failed to carry the burden imposed on them to defeat the City's properly supported motion for summary judgment.
For the reasons stated above, we hold: 1) There was substantial evidence to support the jury's verdict of negligence and its award against the Board based on property damage, and to support the jury's verdict for mental anguish damages in the amount of $282,500; 2) that the verdict of $179,830, for property damage, awarded to 14 plaintiffs, is due to be reinstated and a judgment entered thereon; 3) that the portion of the judgment awarding punitive damages is due to be reversed; 4) that the trial judge did not abuse his discretion in declining to issue a permanent injunction against the Board; and 5) that the trial court properly entered the summary judgment for the City of Prichard.
Thus, the summary judgment for the City of Prichard is affirmed. As to the Board, the reduced compensatory award for property damage is reversed, and the cause is remanded for the jury's verdict on property damage to be reinstated and a judgment entered thereon; the award of mental anguish damages is affirmed; the award of punitive damages is reversed, and on remand the trial court is directed to enter a judgment for the Board on the claim for punitive damages; and the denial of a permanent injunction is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS. *Page 1209 
HOOPER, C.J., and MADDOX, ALMON, HOUSTON, KENNEDY, COOK, BUTTS, and SEE, JJ., concur.
[1] James W. Carson, Estelle McDaniel, Johnnie Davis, Randolph Singleton, Daisy Lee Robinson, L.T. Vaughn, Emanual Jackson, Ella Seales, Annette Austin, Cleveland Hubbard, Delfrey Williams, Anthony France, Lennell Gaillard, and the estate of James W. Davis.
[2] The residents (who all lived in the Velma Street, West Highland Avenue, and Messer Street area that abuts Toulmin Creek) alleged negligence on the part of the City in regard to the construction and/or maintenance of its street water and storm water drainage system, and negligence, wantonness, and trespass on the part of the Water Works and Sewer Board. The residents complained that the raw sewage overflow caused them to suffer mental anguish, emotional distress, annoyance, and inconvenience.
[3] The motion for a directed verdict and the motion for a JNOV have been renamed by an amendment to Rule 50, Ala. R. Civ. P. See the comments to the October 1, 1995, amendment to that rule.