[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 299 
Clayton Barlow appeals from a summary judgment entered in favor of Piggly Wiggly Dixieland, Inc.[1] Our supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975. We reverse and remand.
Barlow worked for Piggly Wiggly, a grocery company, for 22 years. From 1984 to 1994, he worked at Piggly Wiggly's grocery store in Evergreen. On August 8, 1992, Barlow injured his back at work while unloading a pallet of sugar. At that time, Barlow was the store's grocery manager. His duties consisted of unloading grocery trucks, opening the store, mopping and buffing the floors, sweeping, stocking shelves, operating the cash register, cashing checks, working in the deli, putting up displays, retrieving shopping carts, and cleaning the parking lot. He both performed these duties and supervised others in their performance of them. He also was being considered for further training so that he could become eligible for a promotion to assistant manager. Between August 28, when Barlow consulted a doctor about his back injury, and December 2, he estimates that he missed about two or three weeks of work while undergoing physical therapy. During the fall of 1992, he remained the grocery manager. He continued his supervisory duties, but was assigned lighter duty in that he stocked only the shelves of the cereal aisle instead of stocking the entire store.
Barlow suffered additional back pain, even though he was working a lighter duty assignment. On December 2, he met with three employees of Piggly Wiggly, who informed him, he says, that he could no longer perform the duties of grocery manager and that he would have to become a cashier. Barlow says they also informed him that his doctor had limited him to working 24 hours a week. Barlow insists that his doctor never placed any time limitations on his work schedule, and the doctor's notes in evidence support that claim. Piggly Wiggly contends that it was informed by its workers' compensation insurance carrier, Hartford Insurance Company, that Barlow's doctor had placed the 24-hour restriction on him. Despite Barlow's protests, he was demoted from grocery manager to cashier, his hours per week were reduced from 48 to 24, and his pay was reduced from $370 per week to hourly pay at the minimum wage.
After Barlow's hours and salary were reduced, he received temporary partial disability benefits from Hartford until August 1, 1993. The benefits were paid irregularly. Barlow claims that when he complained to Hartford, he was told that Piggly Wiggly was not reporting his wages regularly and was thereby hampering Hartford's efforts to pay the benefits.
In April 1993, Barlow's work schedule became erratic. The time at which he was to report for work changed daily, and his shift changed frequently. Since July 1993, however, Barlow has been assigned consistently to the 6:00 to 11:00 a.m. shift as a cashier. Piggly Wiggly contends that the early shift is the lightest duty assignment for a cashier and that the store accommodated Barlow's continued difficulty from his injury by allowing him preferential treatment for breaks and by allowing him to sit or stand as needed. Piggly Wiggly also alleges that Barlow requested the early shift so that he could devote time to a barbecue business he owns. Barlow denies those allegations. *Page 300 
Barlow testified that when he complained to his supervisor, John Johnson, about his erratic shift assignments, Johnson informed Barlow that he had been instructed to make things difficult for Barlow in an effort to make him quit his job. Johnson denies Barlow's allegation. We note, however, that records generated by Hartford reflect that Piggly Wiggly informed Hartford it did not want to keep Barlow permanently as an employee after his injury. Barlow stated that after a new store manager took over in July 1993, he complained to the new manager about his hours and at that time he began working the morning shift consistently. The record does not reflect that Barlow ever complained further to the new manager about his hours, working conditions, or salary.
On February 11, 1994, Barlow and Piggly Wiggly reached a settlement regarding Barlow's workers' compensation claims. He received $29,183 in compensation, but reserved any claims he might have arising under § 25-5-11.1, Ala. Code 1975 (Alabama's wrongful termination statute). On February 13, Barlow resigned from Piggly Wiggly. He contends that he was constructively discharged. Piggly Wiggly asserts, however, that co-employees with whom Barlow spoke said that he informed them he was resigning because he could not physically continue in the cashier's job, because his attorney told him to resign, and because he was afraid he would be fired when Piggly Wiggly learned about his wrongful termination lawsuit. On February 14, Barlow sued Piggly Wiggly for wrongful termination.
In its order entering a summary judgment for Piggly Wiggly, the trial court stated that Barlow "was not discharged, constructively discharged, or terminated from his employment with Piggly Wiggly." Barlow argues that he presented substantial evidence that Piggly Wiggly's actions constituted a constructive discharge, and, therefore, that the trial court's entry of a summary judgment was improper.
Our standard for reviewing a summary judgment is well settled. The summary judgment was proper if there was no genuine issue of material fact and Piggly Wiggly was entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. Piggly Wiggly had the burden to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. Long v. Jefferson County,623 So.2d 1130, 1132 (Ala. 1993). If Piggly Wiggly made that showing, then the burden shifted to Barlow to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against him. Id. In deciding whether there was a genuine issue of material fact, we view the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Id. The applicable standard of review is the "substantial evidence" rule. §12-21-12, Ala. Code 1975. "Substantial evidence" is defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
Section 25-5-11.1, Ala. Code 1975, states that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter." To recover under that statute, a claimant must prove: (1) that the claimant filed a workers' compensation claim for a work-related injury; (2) that the injury prevented work by the claimant for a period of time; and (3) that upon returning to work, the employer (a) informed the claimant that he or she no longer had a job or (b) constructively discharged the claimant for either instituting or maintaining a claim for workers' compensation.Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364
(Ala. 1988). In Irons v. Service Merchandise Co., 611 So.2d 294,295 (Ala. 1992), our supreme court defined "constructive discharge" as follows:
 " '[I]f the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has [brought about] a constructive discharge and is as liable for any illegal conduct *Page 301 
involved therein as if it had formally discharged the aggrieved employee.' "
(Quoting Jurgens v. EEOC, 903 F.2d 386, 390 (5th Cir. 1990)). That definition follows the objective standard utilized by the federal courts. See, e.g., Boze v. Branstetter, 912 F.2d 801
(5th Cir. 1990); Jett v. Dallas Indep. Sch. Dist., 798 F.2d 748
(5th Cir. 1986), aff'd in part and remanded in part on othergrounds, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).
To withstand a motion for a summary judgment, a plaintiff claiming retaliatory discharge under § 25-5-11.1 must present substantial evidence that he or she was terminated for seeking workers' compensation benefits and that the reasons proffered by the employer for the termination are a pretext for an otherwise impermissible termination. Twilley, 536 So.2d at 1369.
After reviewing the evidence submitted by both parties, much of it disputed, we find that Barlow has shown a progressive deterioration of his work situation following his claim for workers' compensation benefits, and that he has presented at least a prima facie case supporting his claims that Piggly Wiggly's purpose was to induce him to resign. Before filing the workers' compensation claim, Barlow was a 22-year employee who had received excellent performance evaluations and who was being considered for upper management at his store. After Barlow filed his workers' compensation claim, he contends, the following occurred: (1) His wages were reduced over 70%. (2) His supervisor informed him that he had been instructed to make things difficult for Barlow in order to make him quit. (3) Piggly Wiggly failed to regularly inform Hartford of Barlow's weekly wages, thereby delaying his temporary partial disability checks. (4) His work schedule was erratic for several months. (5) His general job authority was taken from him. (6) Piggly Wiggly advised Hartford that it did not want to keep Barlow as an employee. (7) Piggly Wiggly advised Barlow that his work schedule was reduced to 24 hours per week at the instruction of his physician when, in fact, the physician had not issued such an order. (8) Piggly Wiggly claimed its store policy dictated the reduction in hourly pay, yet the policy required a written agreement between the parties that was never effectuated.
In light of the foregoing, we conclude that Barlow presented substantial evidence that he was constructively discharged for seeking workers' compensation benefits and that the reasons proffered by Piggly Wiggly for the termination were pretextual, even though when Barlow resigned he was working a consistent schedule and had reached a settlement of his workers' compensation claim. This case is distinguishable from White v.Midtown Restaurant Corp., 632 So.2d 1330 (Ala. 1994), in which our supreme court stated that a mere demotion would not support a claim of retaliatory discharge under § 25-5-11.1, Ala. Code 1975. In White, although the plaintiff was demoted from the position of manager to that of assistant manager, his work hours and wages remained the same; therefore, he suffered no loss of employment that could reasonably be construed as a "partial termination" of employment so as to trigger §25-5-11.1. Viewing the evidence in the light most favorable to Barlow, one could conclude that his "reassignment" clearly cost him both work hours and considerable income. The evidence suggesting a loss caused by the reassignment, together with Barlow's evidence suggesting retaliation against him, is sufficient to preclude the entry of a summary judgment against him.
We must address Piggly Wiggly's argument that Barlow's working conditions could not be considered intolerable because Barlow did not complain to the store manager before he resigned. In Haygood v. Wesfam Restaurants, Inc.,675 So.2d 1312 (Ala.Civ.App. 1996), this court held that a plaintiff who did not complain to company supervisors before she resigned had not proved a constructive discharge. In Haygood, the employee claimed that three of her co-employees had made her working conditions intolerable, and even though she conceded that the area supervisors were nice to her, she did not seek their assistance. Those facts are not present here. Barlow's protests to company management about his demotion from grocery manager to cashier were futile. *Page 302 
When he complained to his immediate supervisor about his erratic schedule, he alleges, he was informed that his supervisor had been instructed to make his job difficult. To expect Barlow to voice complaints to those he claims were trying to make him resign would be unrealistic.
We next address Piggly Wiggly's argument that it is entitled to a summary judgment because Barlow did not comply with Rule 56(c)(1). Piggly Wiggly contends that Barlow's opposition to its motion for summary judgment did not contain a narrative summary or statement along with the pleadings and discovery materials offered in opposition, and that Barlow's failure in this regard was fatally defective. Barlow filed a cover sheet listing all of the exhibits he offered in opposition to Piggly Wiggly's motion. He itemized the documents submitted, highlighted pertinent portions, and attached the items listed. He also filed, before argument was heard on the summary judgment motion, a pretrial statement in which he set forth his claims and identified the documents upon which he relied in support of his contentions. In International Fidelity Ins. Co.v. Gilliam, 659 So.2d 24 (Ala. 1995), our supreme court addressed claims that a movant had failed to comply with the Rule 56(c)(1) requirement of a narrative summary. The court concluded that the motion for summary judgment "included exhibits sufficient to meet the narrative summary requirement of Rule 56." Id. at 27. Likewise, Barlow's submission was sufficient to meet the Rule 56 requirements.
Finally, we address Piggly Wiggly's argument that Barlow did not allege in his complaint that he was wrongfully discharged. Barlow's complaint alleges that, after his injury, Piggly Wiggly "demoted [him], reduced his working hours, reduced his pay and took away his job responsibilities." The complaint then states that Barlow sustained damages "[a]s a direct and proximate result of [Piggly Wiggly's] wrongful termination." Rule 8, Ala.R.Civ.P., is complied with if the complaint gives an opponent fair notice of the pleader's claim and the grounds upon which it rests. Mitchell v. Mitchell, 506 So.2d 1009
(Ala.Civ.App. 1987). Barlow alleged, at least inferentially, that he was wrongfully discharged.
The judgment is due to be, and it is hereby, reversed, and the cause is remanded for further proceedings.
The foregoing opinion was prepared by Sam A. Beatty, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of §12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur.
[1] The complaint and the notice of appeal named this defendant as "Piggly Wiggly." This defendant's answer states its name as "Piggly Wiggly Dixieland, Inc."