895 So.2d 258 (2004)
Benny J. GEORGE
v.
Antoinette A. RAINE et al.
1030752.
Supreme Court of Alabama.
July 23, 2004.
*260 Jason T. Fleishman of Fleishman Law Firm, Tuscaloosa, for appellant.
Samuel Maples, Birmingham, for appellee Antoinette A, Raine.
*259 LYONS, Justice.
Benny J. George appeals from a summary judgment entered in favor of Antoinette A. Raine and all named corporate defendants[1] in an action George brought against them alleging the fraudulent transfer of real and personal property. We affirm.

I. Facts and Procedural History
In 1999, George obtained a judgment for fraud from the Tuscaloosa Circuit Court against Sterling Limited, Inc. ("Sterling"), and Sam Raine, for $30,000 in compensatory damages and $60,000 in punitive damages, plus attorney fees and court costs. Sam Raine was the president of Sterling and is the husband of Antoinette A. Raine; Antoinette was a shareholder in Sterling. Before the 1999 judgment was entered, but after the complaint was filed in that case, Sterling filed a petition in bankruptcy and the corporation was dissolved. Sam filed a subsequent individual bankruptcy petition under Chapter 7 of the United States Bankruptcy Code. George sought to collect his 1999 judgment from Sam during Sam's bankruptcy proceeding; however, the bankruptcy court discharged Sam from any debt owed to George as a result of the 1999 judgment. George then filed in the Tuscaloosa Circuit Court a motion for leave to enforce the 1999 judgment; that motion was denied.
On January 24, 2003, in another effort to enforce the 1999 judgment against Sam and Sterling, George filed the present action in the Jefferson Circuit Court against Antoinette A. Raine, Sterling, and seven other named corporate defendants. In Count I of the complaint, George sought a judgment declaring his rights to collect from Antoinette and the named corporate defendants the 1999 judgment entered against Sterling and Sam based on the assertion that Antoinette had received assets from Sterling at the time of its dissolution. In Count II of the complaint, George sought damages as a result of an alleged fraudulent transfer to Antoinette of real and personal property of Sterling resulting from the dissolution of the corporation. In Count III of the complaint, George sought damages based on Antoinette's alleged attempt to fraudulently transfer to herself a mortgage that secured a debt allegedly owed Sterling by Terry and Irene Davis.
On March 16, 2003, Sam Raine, on behalf of all the named corporate defendants, and Antoinette filed an "answer, motion to dismiss, and third-party counterclaim." The trial court denied the motion to dismiss.
On July 2, 2003, Antoinette and the named corporate defendants filed a motion for a summary judgment arguing that in his complaint George failed to state a cause of action against any of the defendants and that George's action against Antoinette was barred by the doctrine of res judicata, by the doctrine of laches, and by the applicable statute of limitations. After the parties had had the opportunity to argue their positions orally and in written *261 submissions to the trial court, the trial court granted the motion for a summary judgment on August 8, 2003. On September 5, 2003, George filed a motion to alter, amend, or vacate the summary judgment. After the trial court heard oral and written arguments from the parties on the motion to alter, amend, or vacate, the trial court denied George's motion. This appeal followed.[2]

II. Standard of Review
Our review of a summary judgment is de novo. "A motion for summary judgment is granted only when the evidence demonstrates that `there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Ala. R. Civ. P." Reichert v. City of Mobile, 776 So.2d 761, 764 (Ala.2000). We apply "the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419, 420 (Ala.1996). In order to defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).

III. Analysis

A. Did the Summary-Judgment Motion Comply with Rule 56(c)(1)?
George first argues that the trial court should have denied the motion for a summary judgment because the motion did not contain a narrative summary of what the defendants believed to be the undisputed facts as required by Rule 56(c)(1). George argues that absent a statement of the undisputed facts, there were no facts that he could have contested, and there were no facts upon which the trial court could have based its ruling.
Antoinette contends that the motion for a summary judgment met the requirements of Rule 56(c), Ala. R. Civ. P., because she filed her affidavit and exhibits with the motion and, she says, those documents were sufficient to provide the trial court and George with what she contended are the material undisputed facts in the case.
We find no merit in George's argument that Antoinette and the named corporate defendants failed to comply with the requirement of Rule 56(c)(1) that a narrative summary, which may be set forth in the motion or attached as an exhibit, be filed with the summary-judgment motion. Antoinette and the named corporate defendants attached numerous exhibits to their motion. Those exhibits included, among other documents, Antoinette's affidavit in which she declares that she did not receive any assets from Sterling upon its dissolution and in which she refers to the other exhibits attached to the motion; a document titled "final return" that notes that Sterling's bank balance of $925.31 was transferred to Sam's bankruptcy estate; and Sterling's tax return from 1997, the year Sterling was dissolved, in which Sterling claimed that it had no assets.
In Kennedy v. Wells Fargo Home Mortgage, 853 So.2d 1009, 1011-12 (Ala.Civ. *262 App. 2003), the Court of Civil Appeals dealt with a similar circumstance:
"On appeal, Kennedy first argues that the trial court erred in entering a summary judgment in favor of Wells Fargo because, he argues, Wells Fargo's summary-judgment motion did not comply with Rule 56, Ala. R. Civ. P. Kennedy first argues that the summary-judgment motion did not contain a `narrative summary of what the movant contends to be the undisputed material facts.' See Rule 56(c)(1), Ala. R. Civ. P. However, each summary-judgment motion was supported by an affidavit executed by [Chalice E.] Tucker [the lawyer representing Wells Fargo], on behalf of Wells Fargo, that set forth a summary of the facts. For the purposes of this opinion, however, we address Kennedy's argument as it pertains to the last of Tucker's affidavits, the one submitted in support of Wells Fargo's second amended motion for a summary judgment; of the three of Tucker's affidavits submitted by Wells Fargo, that affidavit sets forth the most comprehensive recitation of Wells Fargo's version of the facts of this case. We note that, although Kennedy argues otherwise, the affidavit references and is supported by properly certified copies of mortgages, deeds, and other supporting documents.
"In International Fidelity Insurance Co. v. Gilliam, 659 So.2d 24 (Ala.1995), our supreme court held that a summary-judgment movant had complied with the requirements of Rule 56(c)(1), Ala. R. Civ. P., when it submitted `exhibits sufficient to meet the narrative summary requirement' of that rule. 659 So.2d at 27. In White v. Howie, 677 So.2d 752, 754 (Ala.Civ.App.1995), this court held that an affidavit submitted in support of a motion for a summary judgment and containing a narrative summary of the facts was sufficient to meet the Rule 56 requirement for a narrative summary of the undisputed facts. See also Barlow v. Piggly Wiggly Dixieland, Inc., 680 So.2d 297 (Ala.Civ.App.1996) (a pretrial statement listing claims and referencing supporting documents was sufficient to meet the narrative-summary requirement of Rule 56([c])).
"In this case, Tucker's affidavit sets forth Wells Fargo's version of the undisputed facts of this action. That affidavit referenced properly submitted supporting documents. Therefore, Kennedy has not persuaded this court that Wells Fargo failed to comply with the narrative-summary requirement of Rule 56(c)(1), Ala. R. Civ. P."
Antoinette's affidavit and the accompanying documents submitted in support of the motion for a summary judgment in this proceeding satisfy the requirement set forth in Rule 56(c)(1), Ala. R. Civ. P., that a narrative summary of what the movant contends to be the undisputed facts be filed with the summary-judgment motion.

B. Did Antoinette Receive Assets as Alleged in Counts I and II?
Counts I and II are based upon the averment that Antoinette received assets at Sterling's dissolution. George contends that Antoinette's affidavit submitted in support of the summary-judgment motion contradicted the Amended Plan of Reorganization Sam had filed during his bankruptcy proceeding and in doing so evidenced the main disputed fact between the parties  whether Antoinette received assets from Sterling upon its dissolution. George contends that, according to the Amended Plan of Reorganization, Antoinette did receive assets from Sterling upon its dissolution. George argues that Antoinette, to the extent of the distribution she received from Sterling, is responsible for the judgment against Sterling, pursuant *263 to § 10-2B-14.05 and § 10-2B-14.07(d)(2), Ala.Code 1975.
Antoinette maintains that the documents submitted as exhibits to the summary-judgment motion evidenced that she did not receive any assets upon Sterling's dissolution. Antoinette contends that George failed to prove that she had received any assets upon Sterling's dissolution and that that fact was therefore undisputed. Antoinette argues that George's reliance on the Amended Plan of Reorganization is misplaced because, she says, that document does not address the assets held by Sterling at the time its dissolution.
Antoinette contends that only $925.31 remained in Sterling's bank account at the time of its dissolution, that that amount was deposited in Sam's bankruptcy estate, and that Antoinette received no assets upon Sterling's dissolution.
The documents in support of Antoinette and the named corporate defendants' motion for a summary judgment support the conclusion that Antoinette did not receive any assets upon Sterling's dissolution. Once this properly supported motion for a summary judgment was presented to the court, the burden then shifted to George to present substantial evidence creating a genuine issue of material fact as to whether Antoinette had received any assets upon Sterling's dissolution. However, George failed to present substantial evidence to rebut the showing by Antoinette and the named corporate defendants that she received no assets. In response to their summary-judgment motion, George relied solely on the Amended Plan of Reorganization Sam had filed during his bankruptcy proceeding.
The Amended Plan of Reorganization reads, in pertinent part:
"In December 1997, the corporation was dissolved and the assets were distributed among its shareholders in percentages to the ownership of shares of stock. Antoinette Rain, at the time of dissolution, owned 980 shares of stock out of 1,000 or 98%.... Antoinette A. Raine, in order to help the reorganization, will fund the reorganization with $120,000 ($1,000 a month for the next 10 years). All assets of [Sterling], which reverted to Antoinette A. Raine on the dissolution, will remain in her control to dispose of as she desires."
Sterling's tax return for 1997 reflects that Sterling did not have any assets to distribute at the time of its dissolution. Another document states that Sterling had $925.31 in its bank account at the time of its dissolution. Although the documents submitted in support of the summary-judgment motion reflect that this sum was distributed to Sam's bankruptcy estate, the Amended Plan of Reorganization states that Antoinette received 98% of the assets. However, this circumstance does not, as George contends, create a genuine issue of material fact because the Amended Plan of Reorganization does not attribute any value to any asset that might have been distributed to Antoinette. The only evidence before the trial court as to the value of assets at the time of distribution and to whom those assets might have been distributed relates to the sum of $925.31 that was on hand at dissolution and that was distributed to Sam's bankruptcy estate. The trial court's summary judgment as to Counts I and II is due to be affirmed. We need not address the additional defenses asserted by Antoinette based upon the doctrine of res judicata and the statute of limitations.

C. Was There Evidence of a Fraudulent Transfer as Alleged in Count III?
George sought equitable relief and damages in Count III based on Antoinette's attempted satisfaction of a mortgage *264 entered into in connection with a debt owed Sterling by the Davises, thereby "work[ing] a transfer of the mortgage from Sterling to Antoinette." George alleged that that transfer rendered Sterling insolvent. George relies on a "Partial Satisfaction and Release" that Sam and Antoinette executed on behalf of Sterling. The document refers to the Davises' mortgage and reads, in pertinent part:
"The intent of this partial release is to delete any interest that [Sterling] may have/or could have had and the intent is to satisfy any claim that [Sterling] had. A copy of the assignment of all assets of [Sterling], ... is attached hereto to confirm the right to delete and remove [Sterling] and to satisfy any claim.
"The balance due on this mortgage as of October 8, 1999 is $33,009.71.
"In consideration of said payment, the undersigned hereby releases the above described property from the lien of said instrument, but it is expressly understood and agreed that this release in no wise, and to no extent whatsoever, affect[s] the lien of said instrument as to the remainder of the property described in or secured by said instrument or subject to said lien."
Antoinette contends that George failed to establish that there was a transfer of the mortgage. We agree for two reasons. First, the Partial Satisfaction and Release deals only with an interest Sterling "may have/or could have had" in the Davis mortgage. However, there is no evidence indicating that Sterling in fact ever had an interest in the mortgage. Section 8-9A-1, Ala.Code 1975, a part of the Alabama Uniform Fraudulent Transfer Act, § 8-9A-1 et seq., Ala.Code 1975 ("the AUFTA"), defines "transfer" as "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." No evidence establishes that the interest in the mortgage was an asset of Sterling. Second, under the AUFTA only transfers by a debtor are condemned. See § 8-9A-4(a) ("A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor." (emphasis added)). A debtor is defined as "[a] person who is liable on a claim." § 8-9-1(6). In Folmar & Associates LLP v. Holberg, 776 So.2d 112, 117 (Ala.2000), addressing the AUFTA, we held, "[t]he plain language of the statute makes it applicable only to transfers `made by a debtor.'" Because Antoinette was not a debtor, the AUFTA does not apply to her.
The trial court's summary judgment as to Count III is due to be affirmed. We need not address the additional defenses raised by Antoinette based upon the statute of limitations and the doctrine of res judicata.

IV. Conclusion
We affirm the trial court's summary judgment.
AFFIRMED.
HOUSTON, SEE, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur in the main opinion insofar as it affirms the summary judgment as it applies to the plaintiff's Count III claiming fraudulent transfer. I further concur in *265 Part III.A. of the main opinion holding that Antoinette's motion for summary judgment, together with her exhibits to her motion, satisfied the requirements of Rule 56(c)(1), Ala. R. Civ. P.
I respectfully dissent from the main opinion insofar as it affirms the summary judgment as it applies to the plaintiff's Count I and Count II. The summary judgment materials before the trial court read in the light most favorable to the plaintiff, as we must read them in reviewing a summary judgment against the plaintiff, constitute substantial evidence that Antoinette received 98% of the $925.31 belonging to the corporation at the time of its dissolution. Because the Amended Plan of Reorganization says that Antoinette would receive 50,000 shares of additional stock in the corporation for the $120,000 she would pay into the corporation over the 10-year period, that $120,000 cannot be considered fair value paid by her to the corporation for the 98% of the $925.31. The 98% of the $925.31 is too much for us to deem de minimis
NOTES
[1] The named corporate defendants include Sterling Limited, Inc., and seven other companies, which George alleges in his complaint "either merged with Sterling or are subsidiaries" of Sterling.
[2] Although George listed "Sterling Limited, Inc., et al." as the appellees on the notice of appeal, only Antoinette has submitted a brief to this Court.