WOODALL, Justice.
Walker Key Condominium Homeowners Association, Inc. (“the Association”), appeals from a summary judgment in favor of Washer-Hill & Lipscomb (“Washer”), an architectural firm, in the Association’s action against it challenging the quality of services Washer allegedly rendered regarding the construction of a condominium project in Orange Beach (“the project”). We reverse and remand.
The factual background of this dispute provided by the parties is somewhat sketchy, and many of the facts appear to be disputed. It appears that the design and construction of the project was contemplated to proceed in at least two phases. “Phase I” apparently included the design and construction of at least four condominium units and is the only phase involved in this action. It is undisputed that initially David Volkert & Associates, Inc. (“Volkert”), was employed to provide architectural services relating to Phase I. Volkert’s services, however, were eventually terminated, and Washer replaced Volkert as the architect for the project.
In July 2001, the Association, describing itself as “a corporation ... composed of all recorded owners of condominium units of [Phase I],” sued Washer and others. The five-count complaint averred that Washer was retained “to render architectural services, to design the buildings, common elements and facilities, and to supervise the construction of the same in accordance *996 with the applicable building codes and industry standards.” The Association complained of “latent defects and improper construction of the buildings, common elements, and facilities” and averred:
“(a) the roof systems ... were designed, manufactured, and/or installed in an improper manner, failing to meet applicable industry standards and applicable code requirements and/or standards for proper application, resulting in water intrusion and damage to the interior structures;
“(b) the exterior stucco cladding wall system was designed, manufactured and/or installed in an improper manner, failing to meet applicable industry practices and applicable code requirements and/or standards for proper application, resulting in water intrusion and damage to the interior structures; [and] “(c) the buildings, common elements, and other facilities were otherwise inadequately and/or improperly designed, constructed and/or installed, resulting in water intrusion and other damage[] to the exterior and interior structures of the buildings, common elements and other facilities.”
(Emphasis added.)
The Association sought compensatory and punitive damages under theories of (1) negligence, (2) wantonness, (3) misrepresentation, (3) breach of warranty, and (4) breach of contract. For example, the complaint sought recovery for negligent or wanton “failure to design ... the buildings ... in accordance with the applicable construction code requirements”; negligent or wanton “failure to supervise the construction of the buildings, common elements, and facilities, and to ensure appropriate use of materials and appropriate installation methods in accordance with applicable code requirements and industry standards”; and negligent or wanton “failure to correct defects in the buildings after notice.” (Emphasis added.)
On September 30, 2002, Washer moved for a summary judgment. On February 17, 2004, Washer filed an amended motion for a summary judgment, contending that the complaint failed to allege any “deficiencies or breaches” by Washer. On April 7, 2004, the trial court entered a summary judgment for Washer and certified the judgment as final, pursuant to Ala. R. Civ. P. 54(b). From that judgment, the Association appealed, contending that it had satisfied its evidentiary burden in opposing Washer’s summary-judgment motion.
The standard by which we review a summary judgment is well established:
“Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. Once the movant shows that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. In determining the propriety of a summary judgment, this Court reviews the evidence that was before the trial court when it entered the judgment and views that evidence in a light most favorable to the nonmovant.”
Childersburg Bancorporation, Inc. v. Alabama Dep’t of Envtl. Mgmt, 893 So.2d 1142, 1145 (Ala.2004). “In order to defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact.” George v. Raine, 895 So.2d 258, 261 (Ala.2004).
The sole issue is a factual one. It is undisputed that Washer was retained to render architectural services as to Phase II of the project. The issue, therefore, is *997 whether the Association has presented substantial evidence indicating that Washer was sufficiently involved in Phase I to implicate it in the allegations of the complaint.
Washer insists that the Association admitted in its answers to interrogatories that the architectural designs for Phase I were prepared by Volkert, not Washer. Consequently, Washer contends, references in the complaint to alleged defects in the architectural designs do not apply to Washer. However, if we were to assume, without deciding, that this contention is correct, the summary judgment was improper.
The complaint avers that, among other things, the “Defendants,” which included Washer, failed to “supervise the construction of the buildings,” and “to correct defects in the building after notice.” At a minimum, the Association presented substantial evidence indicating that Washer undertook to supervise the construction of Phase I.
Specifically, the Association presented in its opposition to Washer’s summary-judgment motion, a notarized “Architect’s Certification for Payment” (“the certification”). The certification was directed to the owner of the project from the general contractor, and covered a period of construction ending May 28, 1998. The certification listed Washer as the architect, and sought a payment installment in the amount of $368,391.18. The certification stated, in pertinent part:
“In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect’s knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.”
(Emphasis added.) The certification was signed by Michael Hill, who, Washer concedes, was “a member of the [Washer] firm.” Washer does not deny that the certification related to the construction of Phase I. Washer’s brief, at 14.
The Association also presented the deposition testimony of Bill Waters, a representative of the general contractor. Waters testified as follows:
“Q. [Counsel for the Association:] What was your understanding of [Washer’s] role on [Phase I] at the point in time you met with [a Washer representative]?
“A. [Waters:] When I met with him, [Washer] was going to help these pay requests get signed off so [the general contractor] could get some money.
“Q. Okay. He was going to review the existing construction and sign off for payment?
[[Image here]]
“A. An architect had to be on board for the lending institution, and that was why [Washer] was over there at that time. ...
“Q. Okay. Do you know if he went out to the job site and reviewed any of the work that was in place?
“A. Yes.”
(Emphasis added.)
On the basis of this evidence, a jury could reasonably conclude that Washer, which replaced Volkert as the architect for the project, performed at least some of the duties as to Phase I that Volkert was initially hired to perform. A jury could conclude that Washer supervised at least some of the construction of Phase I and that it undertook “to ensure appropriate *998 use of materials and ... installation methods in accordance with applicable code requirements and industry standards.”
In short, the Association has presented substantial evidence indicating that Washer was sufficiently involved in Phase I to bring Washer within the allegations of the complaint. Thus, the trial court erred in entering a summary judgment for Washer. That judgment is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
NABERS, C.J., and HOUSTON, LYONS, and JOHNSTONE, JJ„ concur.